**Robert BAILEY et al.**

v.

**ALGONQUIN GAS TRANSMISSION COMPANY et al.**

No. 2000–315–Appeal.

Supreme Court of Rhode Island.

Jan. 30, 2002.

Joseph V. Cavanagh, Jr., Karen A. Pelczarski/Dorothy S. Davison, Providence, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This is another inglorious chapter in a long-running series of civil cases in which, regrettably, the sins of the lawyer as agent are visited upon the client as principal.

The defendant-client, Maguire Group, Architects, Engineers, Planners, Ltd. (Maguire), appeals from a Superior Court order denying its motion to vacate a default judgment that entered against it on August 6, 1999, in the amount of $458,533.69, including interest and costs. The court entered the default judgment because Maguire's lawyer, John Coffey, Jr. (Coffey), inexcusably had failed to respond to a request for production of documents and then inexcusably failed to respond to a series of follow-up motions and conditional court orders compelling Maguire to produce the requested documents. Despite proper service of these documents on Coffey, both his and Maguire's stony silence eventually culminated in the entry of a default judgment against Maguire for the amount of the plaintiffs' damages and prejudgment interest.

The plaintiffs alleged that they suffered personal injuries while they were excavating a trench and laying a gas line in East Providence, and that defendants' negligence caused these injuries. Although Maguire filed an answer denying these allegations, its later default mooted whatever defenses it may have possessed to its asserted liability on these claims. But

Max Wistow, Robert D. Parrillo/Anthony F. Cottone, Providence, for Plaintiff.

when plaintiffs attempted to execute on the default judgment, Maguire learned for the first time of its lawyer's malfeasance and sought to vacate the judgment. The motion justice refused to do so, however, finding no manifest injustice in holding Maguire's feet to the fire lit by its own lawyer's inexcusable neglect. Because we are unable to conclude that the motion justice abused his discretion in denying the motion to vacate the default judgment, we affirm for the reasons amplified below.

## Facts and Travel

The defendant, Algonquin Gas Transmission Company (Algonquin), employed plaintiffs to excavate a trench and lay a gas line in East Providence. The plaintiffs alleged that they suffered personal injuries as a result of working there because of Algonquin's and the other defendants' negligence. Although the complaint did not assert specific allegations against Maguire, plaintiffs alleged that defendants knew or should have known that the soil and ground water that plaintiffs excavated had been contaminated with various toxic chemicals. They further averred that defendants were negligent in failing to warn plaintiffs about the presence of toxic chemicals at this site and in misrepresenting the dangers of working in that area.

In March 1997, during pretrial discovery, plaintiffs propounded a request to Maguire for the production of relevant documents, to which Maguire failed to respond. There followed, in due course, a motion and an order compelling Maguire to produce the requested documents, a conditional default order, the entry of a default, a hearing on damages, and, finally, a default judgment, in August 1999. Despite proper service of these court papers on Maguire's

lawyer and his receipt of several commendable letters from plaintiffs' lawyer entreating him to comply, Coffey failed to respond to any of them. Ultimately, an execution on the judgment issued on September 7, 1999, and plaintiffs caused it to be duly served on Maguire soon thereafter. Finally waking up to the fact that its own lawyer had been asleep at the switch while this train wreck of a default was occurring, Maguire engaged new counsel who, in October 1999, filed a motion to vacate the judgment. The court denied the motion and Maguire then appealed to this Court.

Before representing Maguire on this particular case, for many years Coffey had handled various types of legal work for this same client, mostly of the corporate variety. During 1999, when this lawsuit was pending in the Superior Court, Maguire was providing Coffey with an office, absorbing certain of his administrative expenses, and paying him a retainer of $15,500 per month. At quarterly meetings he attended with officers of the company, Coffey would report to Maguire on the status of this case and on the various other legal matters for which Maguire had engaged him to represent the company. Although Coffey recalled receiving in the mail a request for document production in this case, he testified he did not inform anyone at Maguire about it.[1] He admitted that he did not respond to the request for production or to the motion to compel that followed soon thereafter. He also acknowledged that, during the 1997–1998 period, he had received several items of mail in connection with this case; and that he had opened and looked at some but not all of these court documents that were mailed to him. Instead of responding to the re-

---

1. But Victor Calabretta, Maguire's executive vice president of operations, testified that he was aware of the request for production and actually had searched, to no avail, for the documents requested.

quests and to the orders of the court, however, he would "just stack it [the mail] someplace and ultimately I would throw it away." When Maguire asked him about this case at its quarterly meetings, Coffey testified, he would tell his client that nothing was happening. He conceded that he had done nothing in the case from the time he first had received the request for production in March 1997, up to the time he received the notice of execution on the default judgment in September 1999. Apparently, Coffey considered the case to be one of relative low priority compared with the other legal matters he was handling for Maguire.

Neither Coffey nor Maguire offered any explanation to the motion justice for his total inaction in the case, other than referring to the fact that Coffey was imbibing heavily during this time by consuming eight to ten glasses of wine per day, beginning at lunch (after leaving Maguire's premises for the day) and ending when he went to bed at night. Ultimately, Coffey had himself checked into Butler Hospital in September 1999, where he was treated for alcoholism. Coffey believed that his consumption of alcohol had affected his handling of this case by impairing his judgment. He stated:

"I think it was a pattern that had developed of making bad judgments that sort of steam roll you, and this just happened to be there. And I have no—I can't explain it myself."

Maguire based its motion to vacate the default judgment on Rule 60(b)(1) and (6) of the Superior Court Rules of Civil Procedure. Rule 60(b)(1) provides that a party may be relieved from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(6) allows relief for "any *other* reason justifying relief from the operation of the judgment." (Emphasis added.) The motion justice denied the motion on both grounds. He determined, first, that there was no causal connection between Coffey's tippling and his failure to handle this case properly, noting that Coffey had competently managed various other legal matters for Maguire during the same period he was ignoring the discovery requirements in this case. Indeed, Maguire's attempt to show a causal connection between Coffey's crapulence and his inexcusable neglect in handling this case foundered when its expert witness recanted his medical opinion to that effect after he became aware of the other legal services that Coffey had ably performed for Maguire during this same period.

The motion justice next concluded that Coffey's failure to respond to plaintiffs' document requests did not constitute excusable neglect, but rather it was the result of either unexplained or willful conduct. On appeal, Maguire does not challenge the motion justice's findings with respect to Rule 60(b)(1), but it contends that its motion to vacate should have been granted under Rule 60(b)(6).

The motion justice reasoned that the grounds for relief under Rule 60(b)(6) must be "mutually exclusive" from the grounds that are available for relief under Rule 60(b)(1) through (5).[2] He concluded

2. The United States Supreme Court has stated that the analogous provisions of Rule 60(b)(1) and (6) of the Federal Rules of Civil Procedure "are mutually exclusive." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 393, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74, 88 (1993). Thus, to obtain relief from a judgment, a party must show grounds for relief under Rule 60(b)(6) that are separate and distinct from those available under Fed.R.Civ.P. 60(b)(1)-(5). *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863–64, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855, 874–75 (1988) (citing *Klapprott v. United States*, 335 U.S. 601, 614–15, 69 S.Ct. 384, 390–91, 93

that because of its attorney's inexcusable neglect, Maguire was not entitled to relief under Rule 60(b)(1); therefore, he decided, this same inexcusable neglect that disqualified Maguire from obtaining relief under Rule 60(b)(1) could not offer it relief under Rule 60(b)(6). The motion justice found that defendant "failed to establish any circumstance leading to the default judgment herein which would serve * * * to work a manifest injustice to defendant." Consequently, applying black-letter agency principles, he concluded that Maguire should be held liable for the actions and inactions of the attorney it had selected to represent it in this case, and he therefore refused to vacate the default judgment.

## Analysis

■ We will not disturb a trial court's ruling on a motion to vacate a judgment absent a showing of abuse of discretion or error of law. *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001); *Iddings v. McBurney*, 657 A.2d 550, 553 (R.I.1995). Maguire argues that it should not be held liable for the actions of its attorney because the evidence showed that Coffey was grossly negligent in his handling of this case. Even though the motion justice found that Coffey's negligence was inexcusable, Maguire argues, he should have granted Maguire relief from the judgment under Rule 60(b)(6) because its attorney was not merely negligent, but grossly so and his malfeasance included misrepresentations that led Maguire to believe nothing was happening in the case. The plaintiffs respond that this interpretation of Rule 60(b)(6) would eviscerate the excusable-

neglect standard of Rule 60(b)(1) and result in the granting of nearly all motions to vacate based upon the attorney's negligent conduct. Indeed, the more inexcusable and reprehensible the attorney's neglect, the more likely the client would be entitled to relief under Rule 60(b)(6) but not under 60(b)(1).

■ Under Rule 60(b)(1), unexplained neglect, standing alone, whether by counsel or a party, will not excuse a party's noncompliance with orderly procedural requirements, such as compliance with deadlines for responding to discovery requests and the court's compliance orders. *Iddings*, 657 A.2d at 553. In *King v. Brown*, 103 R.I. 154, 235 A.2d 874 (1967), this Court held that a party was not entitled to relief from a default judgment resulting from the failure of his counsel to comply with procedural requirements unless it is first established that the attorney's neglect was occasioned by some extenuating circumstances of sufficient significance to render it excusable. *Id.* at 157, 235 A.2d at 875. A Rule 60(b)(6) motion can be granted only for some "other reason justifying relief" than the reasons specified in Rule 60(b)(1) through (5) and "only in unique circumstances to prevent manifest injustice." *Vitale v. Elliott*, 120 R.I. 328, 332, 387 A.2d 1379, 1382 (1978). It might be argued that "inexcusable neglect" is indeed an "other reason justifying relief" under Rule 60(b)(6) because "excusable neglect" is required to justify relief under Rule 60(b)(1). But if the neglect is inexcusable, thereby precluding any relief un-

---

L.Ed. 266, 277–78 (1949)). We concur that this reasoning is equally applicable to our own Super. R. Civ. P. 60(b)(6), except that we do not believe that the mere existence of inexcusable neglect by a lawyer, thereby disqualifying the lawyer's client from obtaining relief under Rule 60(b)(1), also disqualifies the client from obtaining relief under Rule

60(b)(6). Rather, if truly extraordinary and unusual circumstances also exist—particularly if they are beyond the control of both the innocent client and the lawyer who is guilty of inexcusable neglect—the relief under Rule 60(b)(6) still might be possible notwithstanding the lawyer's misconduct.

der Rule 60(b)(1), then that same inexcusable neglect cannot constitute the "other grounds" required to obtain relief under Rule 60(b)(6) unless other extraordinary and unusual factors also are present that would justify granting such relief. Thus, in *Bendix Corp. v. Norberg*, 122 R.I. 155, 404 A.2d 505 (1979), this Court noted that Rule 60(b)(6) was not intended to constitute a "catchall" and it quoted Professor Kent's treatise in stating that "circumstances must be extraordinary to justify relief [under Rule 60(b)(6) ]." *Id.* at 158, 404 A.2d at 506 (quoting 1 Kent, *R.I. Civ. Prac.* § 60.08 at 456 (1969)).

Maguire maintains that this case presented the very type of extraordinary and unusual circumstances that cried out for relief under Rule 60(b)(6). It argues that it should not be held accountable for the gross negligence of its attorney in ignoring the document requests and the court order directing its compliance. In support of its argument, it cites *Palazzolo v. Coastal Resources Management Council*, 657 A.2d 1050 (R.I.1995) (per curiam). In that case, the plaintiff's complaint against the defendant was dismissed after the plaintiff's attorney had failed to appear for a hearing on the defendant's motion to dismiss and after the lawyer had absented himself from several other court hearings. The evidence, however, also showed that the plaintiff had attempted to obtain new legal representation in the case, but was hindered in his efforts to do so by his former attorney, who failed to release the plaintiff's file to the new lawyer. This Court noted that "[the client] tried strenuously to extricate himself from a situation in which his case was being severely prejudiced by his attorney's failure to protect his interests." *Id.* at 1051. Under these unusual circumstances, the Court reasoned, it seemed "unfair to impute to this plaintiff the continuing dereliction of this attorney." *Id.* at 1052. For that reason, the Court

decided not to follow the usual attribution rule set forth in *King*, and determined that the general rule of agency, requiring that the neglect of an attorney be imputed to the client, was inappropriate under those extraordinary circumstances. *Palazzolo*, 657 A.2d at 1051; *see King*, 103 R.I. at 157, 235 A.2d at 875.

The *Palazzolo* case, however, is distinguishable from the case at bar. In *Palazzolo*, the client attempted to sever the attorney-client relationship *before* the court had entered a default judgment against the client. In addition, opposing counsel had been informed that plaintiff was attempting to change its counsel and that it was in the process of doing so. Nevertheless, despite this notice, opposing counsel actively pursued a motion to dismiss the complaint. Based on these circumstances, the Court determined that an agency relationship no longer existed between the attorney and the client and, for that reason, it declined to apply agency principles in defaulting the client for the attorney's negligence. In this case, however, there is no evidence that Maguire attempted to terminate its agency relationship with Coffey before the entry of the default judgment. Indeed, it was not until Maguire received an execution on the judgment that it took any action in this regard. Notwithstanding that its attorney was performing or failing to perform the litigation services in question on Maguire's own premises and while Maguire was paying a significant portion of Coffey's office expenses, Maguire did not discover its attorney's malfeasance until the default judgment was a *fait accompli*. Although the parties have stipulated that Maguire itself was not negligent in this situation, we mention these circumstances not to fault Maguire but only to point out the significant differences between this case

and the facts in *Palazzolo* on which Maguire relies.

Holding the client responsible for the lawyer's inexcusable neglect may seem to constitute a harsh result in these circumstances, but it comports with the agency principles that control in this area of the law. As the United States Supreme Court has stated:

"[W]e have held that clients must be held accountable for the acts and omissions of their attorneys. In *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), we held that a client may be made to suffer the consequence of dismissal of its lawsuit because of its attorney's failure to attend a scheduled pretrial conference. In so concluding, we found 'no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.' *Id.*, at 633, 82 S.Ct. at 1390. To the contrary, the Court wrote: 'Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." ' *Id.* at 633–634, 82 S.Ct. at 1390 (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1880) ). * * * This principle applies with equal force here and requires that respondents be held accountable for the acts and omissions of their chosen counsel. Consequently, * * * the proper focus is upon whether the

neglect of [the clients] *and their counsel* was excusable." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 396–97, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74, 90–91 (1993).

Maguire also cites to cases from other jurisdictions in support of its position that it should not have to suffer the consequences of its attorney's gross negligence. *See, e.g., Chang v. Smith*, 778 F.2d 83 (1st Cir.1985); *Sumler v. District Court, City and County of Denver*, 889 P.2d 50 (Colo. 1995); *Railway Express Agency, Inc. v. Hill*, 250 A.2d 923 (D.C.App.1969). Although some courts appear to agree with this proposition,[3] the United States Supreme Court has indicated that, as a general rule, clients are responsible for the acts and omissions of their attorneys in the course of representing their clients in civil litigation. *See Pioneer Investment Services Co.*, 507 U.S. at 396–97, 113 S.Ct. at 1499, 123 L.Ed.2d at 91. Certainly, the proper focus in a Rule 60(b)(1) motion is whether the neglect of the nonmoving party or of that party's counsel was excusable. *Id.* But this inquiry is equally appropriate and necessary under Rule 60(b)(6). *See Davila–Alvarez v. Escuela de Medicina Universidad Central Del Caribe*, 257 F.3d 58, 67 (1st Cir.2001) (holding that because "both [attorneys for the defaulted party] were far from faultless in their conduct," the party seeking relief under Rule 60(b)(6) could not show that it was "faultless in the delay" as required by *Pioneer*, 507 U.S. at 393, 113 S.Ct. at 1497, 123 L.Ed.2d at 88).

The theory that Maguire advances—that an attorney's gross negligence should not be imputed to the client and that such gross negligence can be grounds for relief

---

**3.** *See* Annot. 64 A.L.R. 4th § 4(b) (1988) for a collection of cases that recognize an exception to the general rule imputing an attorney's negligence to the client when the attorney is guilty of gross negligence.

from judgment under Rule 60(b)(6)—also has been criticized by at least one prominent commentator on civil practice and procedure:

"Courts are sensitive to the fact that justice is not always served when clients are required to bear the consequences of attorney misconduct. As a result, there is an older line of cases that holds that when an attorney is guilty of gross negligence, and the client is innocent of wrongdoing, relief from a judgment may be had under Rule 60(b)(6) even though this 'neglect' is not 'excusable' under Rule 60(b)(1) * * *. This line of cases goes against the general rule that conduct arguably within some other subsection of Rule 60(b) should not be grounds for relief under the catch-all provision of Rule 60(b)(6) * * *. This line of cases also is illogical, in that the opponent is made to bear the brunt of unacceptable conduct by an attorney while the party that hired the attorney obtains relief." 12 *Moore's Federal Practice,* § 60.48[4][b] at 60–179–80 (Matthew Bender 3d ed.2001).

Maguire contends that the motion justice overlooked the stipulation that it was not negligent in this case, and that, through no fault of its own, it was misled by its grossly negligent attorney.[4] This argument, however, fails to recognize the "fundamental of agency law which imputes the neglect of an attorney in professional matters to his client and considers the omissions of the attorney as though they were the neglect of the client himself." *King,* 103 R.I. at 156, 235 A.2d at 875. That fundamental law of agency does not mutate merely because the viral strain of

legal misconduct in a particular case has become so virulent as to constitute "gross" negligence. As previously noted, this is not a case in which the client attempted to sever the agency relationship before judgment entered, as was the situation in *Palazzolo.* Thus, Maguire's stipulated lack of negligence did not of itself require the motion justice to vacate the default judgment.

Maguire next argues that the motion justice failed to recognize the unique and compelling circumstances of this case. It cites to four cases decided by this Court in which circumstances existed that were found to justify the granting of relief under Rule 60(b)(6): *Palazzolo v. Coastal Resources Management Council,* 657 A.2d 1050 (R.I.1995); *Greco v. Safeco Insurance Company of America,* 107 R.I. 195, 266 A.2d 50 (1970); *Shapiro v. Albany Ins. Co.,* 163 A. 747 (R.I.1933) (per curiam); and *Crossen v. Dudley,* 477 A.2d 107 (R.I. 1984). But our examination of each of these cases shows that they too are distinguishable from the case at bar. In *Shapiro, Palazzolo,* and *Crossen,* the attorney for the defaulted party became unavailable to continue representing the client before a default judgment had entered in favor of the other party. In *Shapiro,* the court found that the attorney had abandoned the case and left the state. In *Palazzolo,* the attorney failed to appear on several scheduled court dates and the plaintiff attempted to engage other counsel. In *Crossen,* the plaintiff's attorney was suspended from the practice of law and failed to include the plaintiff's name on a list of his clients. In *Greco,* the complaint was origi-

---

4. Maguire cites *Valvoline Instant Oil Change Franchising v. Autocare Associates,* 173 F.3d 857, 1999 U.S.App. Lexis 1227 (6th Cir.1999) in support of this argument. That case presented extreme circumstances in which the attorney's conduct was not only negligent, but

also criminal, while the clients themselves were blameless. But the case is prefaced by a notice, warning that it was not recommended for full-text publication. Therefore, its precedential value is questionable, even in the jurisdiction in which it was decided.

nally served on the insurance commissioner and it then followed a circuitous route across the country before it was finally sent to the defendant's attorney of record. That attorney then prepared and filed an answer within a few days after receiving the complaint (approximately one month after the original service), but a default judgment already had entered by that time. This Court concluded that each of these different and unusual circumstances constituted a basis for relief under Rule 60(b)(6). In so ruling, the Court discussed the application of this section of the rule, noting that "courts have wide latitude within which to grant relief from default judgments for reasons other than those set out in the first five clauses of the rule." *Greco*, 107 R.I. at 197, 266 A.2d at 51. The Court cautioned, however, that Rule 60(b)(6) was not intended to be a "catch-all." *Id.* "We are persuaded, then, that the 'other reason' clause should not be applied unless there has been a showing by appropriate evidence of circumstances that would establish a uniqueness that puts the case outside of the normal and usual circumstances accompanying failures to comply with the rules." *Id.* at 198, 266 A.2d at 52.

■ The inexcusable neglect evident in this situation—though we hope and believe it does not represent the usual case of this

ilk—still does not present conditions that are so extraordinary and so unusual in circumstances accompanying failures to comply with the rules that a motion justice would abuse his or her discretion by denying a motion to vacate the default judgment that had entered in the case. Unfortunately, the cases are legion in which the client's attorney was too busy, too distracted, or too unconscientious to bother responding to discovery requests or to other rule-based filing requirements, or to follow-on motions to compel, conditional orders of default, or default judgments.[5] And, most regrettably, it is not unusual for the lawyer to attempt to cover up his or her wrongdoing by failing to report or misrepresenting the true status of the case to the client.[6] Yet such inexcusable misconduct does not thereby morph into "reasons other than those set out in the first five clauses of the rule" for the purpose of granting relief under Rule 60(b)(6). *See Greco*, 107 R.I. at 197, 266 A.2d at 51.

Maguire contends that the circumstances of this situation are made more compelling by the fact that Coffey performed satisfactory legal work for it on other legal matters during the same period in which this case was pending, thereby giving it no reason to doubt the accuracy of Coffey's periodic reports to the client about the status of this case. It cites a Wyoming case in which one of the factors

---

5. *See, e.g., Daniel v. Cross*, 749 A.2d 6 (R.I. 2000) (entry of default when attorney failed to submit transcript needed to perfect appeal); *Astors' Beechwood*, 659 A.2d 1109 (R.I.1995) (attorney failed to file a timely written rejection of an arbitration award because he was "busy"); *Vitale v. Elliott*, 120 R.I. 328, 387 A.2d 1379 (1978) (citing an office fire, attorney failed to answer interrogatories until thirteen months later); *Stevens v. Gulf Oil Corp.*, 108 R.I. 209, 274 A.2d 163 (1971) (because moving party's insurance company negligently attached suit papers to the wrong file, it did not find these documents until two months after entry of a default judgment).

6. *See, e.g., In re Rossi*, 737 A.2d 880 (R.I. 1999) (attorney lied to clients regarding status of case over a period of several years); *Carter v. Folcarelli*, 121 R.I. 667, 402 A.2d 1175 (1979) (attorney misled clients in negligence suit, feigning the case was on the court's docket, when he had transferred the case to another attorney who failed to file); *Cohen v. Goldman*, 85 R.I. 434, 132 A.2d 414 (1957) (attorney failed to notify clients he had settled their case without their authority and then pocketed the settlement proceeds).

considered by the court was the attorney's unexpected failure to appear at a pretrial conference, when he had previously represented defendant competently. *Sanford v. Arjay Oil Co.*, 686 P.2d 566, 571 (Wyo. 1984). But other factors were present in *Sanford* justifying relief from the judgment, including the failure of the plaintiff to serve the defendant with written notice of the default application. In addition, the case was before the Supreme Court of Wyoming as an appeal from a trial court's order vacating the default judgment. The appellate court concluded that the trial justice did not abuse his discretion in setting aside the default judgment against defendant. A ruling in favor of Maguire on this appeal would require the opposite finding: namely, that the motion justice had abused his discretion in denying the motion to vacate.

Maguire also maintains that the motion justice ignored the relative prejudice to the parties in the present case. Maguire asserts that it will be greatly prejudiced if it is denied an opportunity to defend this lawsuit, whereas plaintiffs will suffer no significant prejudice if the case is allowed to proceed to trial. In *Palazzolo*, 657 A.2d at 1051, this Court stated: "In this case plaintiff tried strenuously to extricate himself from a situation in which his case was being severely prejudiced by his attorney's failure to protect his interests." But *Palazzolo* did not rely on the relative prejudice to the parties in a post-default-judgment context. Rather, we were emphasizing the client's efforts to obtain new counsel and to sever the agency relationship with its negligent counsel *before* the default judgment had entered. Here, as plaintiffs point out, because this is an attorney-neglect case, the issue of prejudice to the opposing party was irrelevant under Rule 60(b)(1). In *Astors' Beechwood v. People Coal Co.*, 659 A.2d 1109 (R.I.1995), we indicated that the issue of prejudice should not even be addressed in such excusable-neglect cases. "Rather, the rules focus on the movant's reasons for missing the deadline, not on the effect of missing the deadline upon the opposing party." *Id.* at 1116.

Although prejudice to the opposing party can and should be considered under Rule 60(b)(6), it should not be the sole criterion and need not be the dispositive factor in deciding whether to vacate default judgments, especially in light of the strong countervailing principles favoring finality-of-judgments and attribution of the lawyer's agency status to the client that weigh against the granting of such relief. Admittedly, here the prejudice to plaintiffs did not appear to be irremediable: the case was and remains in a pretrial posture and the delay and expense attributable to Coffey's legal meltdown could have been ameliorated by, for example, an award of attorneys' fees to plaintiffs and reimbursement to them of any other resultant expenses. But the existence of discretion in how a motion justice rules on a request to vacate a default judgment—especially in close cases like this one—is often, as here, the dispositive factor on appeal. Even in circumstances where we might be inclined to rule the other way if we were standing in the shoes of the motion justice, the deference that we must accord to the exercise of the motion justice's discretion and the absence of any reversible error of law committed by that justice in doing so are considerations that deter us from overturning that decision—at least in the absence of other unusual factors that are not present here.[7]

---

**7.** Maguire may ultimately be entitled to a partial credit or to a recovery of a portion of the judgment paid to the plaintiffs in this case. Although in *Calise v. Hidden Valley*

The final issue raised by Maguire concerns the motion justice's comment at the end of his decision to the effect that Maguire may well possess a malpractice cause of action against Coffey for negligence or breach of contract. Although some legal authority supports the proposition advanced by Maguire—namely, that the client's proper recourse for an attorney's *ordinary* negligence causing a default judgment to enter is the filing of a malpractice suit against the attorney, but that the attorney's *gross* negligence can justify the granting a motion to vacate a default judgment, *see Resolution Trust Corp. v. Ferri*, 120 N.M. 320, 901 P.2d 738, 743 (1995)—Maguire cites no Rhode Island cases that adopt this line of reasoning. *But see Cohen v. Goldman*, 85 R.I. 434, 440, 132 A.2d 414, 417 (1957) (reversing a Superior Court order deleting a settlement stipulation from the record and reinstating the case for hearing on the merits, the Court held that the client possessed an adequate remedy at law against the lawyer who had settled the client's case without the client's knowledge and without sharing the settlement proceeds with the client). Consequently, we decline to second guess the motion justice's discretionary call in this case. Even though it may be possible in some truly unusual circumstances—despite an attorney's gross and inexcusable negligence—for a client whose own conduct has been faultless to obtain relief under Rule 60(b)(6), *but see Davila–Alvarez*, 257 F.3d at 67 (holding that because Rule 60(b)(6) is "mutually exclusive" from Rule 60(b)(1), both the client *and* the attorney must be "faultless in their conduct" to allow relief under Rule 60(b)(6)), we are still not persuaded that the motion justice abused his discretion in this case when he declined to grant that relief.

## Conclusion

We are of the opinion that the motion justice correctly applied this Court's previous rulings to the facts of this case when he denied the motion to vacate the default judgment. In any event, we cannot say that he abused his discretion in refusing to vacate the judgment under Rule 60(b)(6). For these reasons, we deny the appeal and affirm the judgment.

FLANDERS, Justice, concurring.

In assessing the relative prejudice to the parties caused by the entry of the default judgment and the motion justice's refusal to vacate same, there is one other equitable factor that, in my judgment, supports the motion justice's discretionary ruling. In this case, the prejudice to Maguire caused by its own lawyer's misconduct still could be alleviated if it is able to obtain contribution from one or more of the other defendants for any amount of the default judgment that it pays to the plaintiffs in excess of its pro-rata share of the plaintiffs' damages. *See* G.L.1956 § 10–6–4 ("[a] joint tortfeasor is not entitled to a final money judgment for contribution until he or she has by payment discharged the common liability or has paid more than

*Condominium Association, Inc.*, 773 A.2d 834 (R.I.2001), we held that a defaulting defendant may not litigate the issue of its proportionate liability as against its former codefendants who had settled with the plaintiffs, we also recognized that the judgment paid by the defaulted defendant would be offset by the amount the plaintiffs had recovered in settlements from the former codefendants. Accordingly, plaintiffs here are not entitled to a

windfall and, after receiving 100 percent of their damages from Maguire, they may not then recover double damages from Maguire's former codefendants. Therefore, should plaintiffs recover damages from the remaining defendants, any amount received in excess of that paid by Maguire shall be credited to Maguire. The plaintiffs can only recover their damages once.

his or her pro rata share of the final money judgment.").

In *Calise v. Hidden Valley Condominium Association, Inc.*, 773 A.2d 834 (R.I. 2001), this Court held that a defaulted defendant could not seek to reduce the amount of its liability *to the plaintiffs* based upon the alleged disproportionate fault of the other joint tortfeasors who had already settled with the plaintiffs before the Super. R. Civ. P. 55(b)(2) hearing on damages. But *Calise* did not address whether a defaulted defendant—after it has discharged its liability to the plaintiffs by paying the amount of a default judgment in excess of its pro rata share of the plaintiffs' damages—could still obtain contribution from the other alleged joint tortfeasors. *See* § 10-6-8 (providing that joint tortfeasors are not released from liability to make contribution to another joint tortfeasor "unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued").

Here, unlike *Calise*, the other alleged joint tortfeasors neither have settled the claims against them nor obtained a joint tortfeasor's release from the plaintiffs before the default judgment entered against the defendant (Maguire) who may be entitled to contribution. Thus, given that the plaintiffs' claims against the other defendants are still pending, it may yet be possible in this case for Maguire to pay the default judgment and then to obtain contribution from one or more of the other defendants, either by filing cross-claims against them or by filing an independent action seeking such relief.