**Supreme Court**

No. 2013-149-Appeal.
No. 2013-227-Appeal.
(PC 09-1272)

Bryan Joachim                                    :

v.                                    :

Straight Line Productions, LLC et al.            :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2013-149-Appeal.
No. 2013-227-Appeal.
(PC 09-1272)

|  |  |  |
|---|---|---|
| Bryan Joachim | : | |
| v. | : | |
| Straight Line Productions, LLC et al. | : | |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.** These consolidated cases came before the Supreme Court after the Superior Court entered an order of dismissal as a sanction for the mid-trial production of certain documents and denied the plaintiff, Bryan Joachim's (plaintiff or Joachim), motion to vacate such order. On appeal, Joachim, who appeared pro se for oral argument,[1] sets forth a myriad of arguments to support his contentions that the hearing justice erred in (1) dismissing the case pursuant to Rule 37(b)(2) of the Superior Court Rules of Civil Procedure; and (2) denying his motion to vacate the order of dismissal pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure. For the reasons set forth herein, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

On March 4, 2009, Joachim filed a complaint in Providence County Superior Court against defendants, Straight Line Productions, LLC, Joseph Strong, and Ann Strong

---

[1] Joachim was represented by counsel in the Superior Court; however, he pursues this appeal pro se.

- 1 -

(collectively, defendants). In his second amended complaint, Joachim set forth allegations of, inter alia, breach of fiduciary duty resulting from oppressive conduct, breach of fiduciary duty resulting from self-dealing, fraud in the inducement, and negligent misrepresentation. The essence of Joachim's complaint is that, after he paid $ 260,000 for a membership interest in Straight Line Productions, Joseph and Ann Strong shut him out by purchasing the interests of two other members to form a collective ownership interest of 80 percent. Thereafter, according to Joachim, the Strongs used their position to, among other things, engage in oppressive conduct by converting Straight Line's assets for their own personal gain and to engage in self-dealing by entering into transactions with other corporate entities for which the duo also serve as fiduciaries.

During discovery, defendants served three requests for production of documents upon plaintiff. It is undisputed that, throughout the course of discovery in this matter, the Superior Court did not enter any order compelling plaintiff to provide or permit discovery.

On April 25, 2012, a jury was impaneled and a trial commenced. Throughout the first several days of trial, various witnesses were called, including a forensic accountant, the accountant for Straight Line, and Joseph and Ann Strong. On Monday, April 30, 2012, four days into trial, plaintiff's counsel called Joachim as a witness. During cross-examination, defense counsel inquired into a letter (marked as exhibit No. 29) that Joachim had written to Joseph Strong. When he asked Joachim about the March 19, 2008, date on the letter, Joachim indicated that this letter had apparently been auto-dated by his computer. He further elaborated that he was "going through [his] files just this past weekend, [and he] came across one with a date September, I believe, 17th." The cross-examination then continued without scrutiny into anything else that Joachim may have stumbled upon over the weekend.

Joachim's cross-examination continued into the fifth day of trial, which was followed by redirect examination. During this questioning, plaintiff's counsel showed Joachim an exhibit marked for identification as exhibit No. 41. When plaintiff's counsel asked Joachim if he recognized exhibit No. 41, defense counsel objected. The trial justice requested both parties to approach, and the following exchange took place at side bar:

"The Court:        What is it?

"[Plaintiff's Counsel]:These are notes of Mr. Joachim apparently talking in at the time that he – he had the conversations.

"The Court:        Were they produced? Were they asked for?

"[Defense Counsel]:  Yes. And we've never seen this prior to this moment after my cross-examination.

"The Court:        Why weren't they produced if they were asked for.

"[Plaintiff's Counsel]:I just found out about these as well.

" * * *

"The Court:        I am going to keep this out if there is a question – if there is a request for them. But let me see what the request was. I am going to send the jury for the midmorning break."

The trial justice then excused the jury and took a brief recess. When the court reconvened outside of the presence of the jury, defense counsel noted that exhibit No. 41 appeared to be Joachim's handwritten notes and were not "helter skelter written on a piece of paper and put aside[,]" but, instead, "appear to be part of a journal or diary." Defense counsel further stated that he "would question what other documents Mr. Joachim has that * * * we were not provided with. This is clearly pertinent stuff." Based upon the fact that these notes were not disclosed until mid-trial and after his cross-examination of Joachim, defense counsel moved to dismiss all claims in the action pursuant to Rule 37(b).

The trial justice ordered that plaintiff's counsel turn over to the defense all documents that had allegedly been recently discovered by Joachim other than such documents believed to be privileged. The court then recessed until that afternoon. When the parties reconvened, plaintiff produced 155 pages of documents that had not been produced to defendants during discovery. The plaintiff's counsel stated that the documents had been provided to him the day before, at which point he compared the documents to the document requests propounded on behalf of defendants and concluded that "none of these documents fall directly within any of those requests." However, when further questioned about this position, plaintiff's counsel indicated that, "[i]n the broad category of – there's a request for documents to support [c]ount 1, documents to support [c]ount 2. I believe if * * * under the oppression category these documents may, may fall within that."[2] The trial justice deferred further arguments on the matter until the next day to give defense counsel a chance to review the documents.[3]

The following day, after hearing arguments from counsel for each party, the trial justice summarized defendants' argument that they "have been denied a fair trial because information contained in the various documents * * * would have permitted them to properly cross-examin[e] plaintiff with respect to a multitude of issues to which he testified at a time when they did not have some of [the late-disclosed documents]." The trial justice then noted that the Rules of Civil Procedure "made trial no longer an 'I gotcha' proposition."[4] He concluded that "the defendants

_____

[2] Tellingly, plaintiff's counsel also stated the following: "Would I have produced it if I had it? Me, looking at that request and analyzing that their – the request for production of documents, I would have, if I had that in my possession, I would have produced it."

[3] To avoid delaying matters, the trial justice brought the jury back at that time and some further testimony was heard throughout the afternoon.

[4] With respect to Joachim's purported reasons for the late disclosure, the trial justice stated: "The [c]ourt is not prepared at this juncture to say that it believes that Mr. Joachim has commit[ted] perjury. The [c]ourt clearly does not believe that the plaintiff seriously undertook the [discovery] responsibilities that were his. But that's far short of perjury."

unfortunately have been denied tools which would have enabled them to have had a fair trial" and that "the bell cannot be un-rung by bringing the jury back and having them hear further and additional testimony." Accordingly, the trial justice dismissed the case with prejudice pursuant to Rule 37(b), but he declined to impose any monetary sanctions or counsel fees. The trial justice entered a written order to that effect on May 25, 2012, and final judgment entered on July 23, 2012.

On August 10, 2012, Joachim filed both a motion to vacate the Superior Court's judgment pursuant to Rule 60(b) and a notice of appeal to this Court. On April 19, 2013, the trial justice delivered a bench decision on Joachim's motion to vacate. In it, the trial justice noted that "the action [taken] by this [c]ourt was draconian and unprecedented in this jurisdiction." Nevertheless, he went on to declare:

> "[U]nder the unique circumstances of this case, the [c]ourt believed that any other resolution would have imposed upon defendants an inappropriate burden not of their making which resulted from a claimed last-minute discovery by plaintiff of some 155 pages of material, portions of which, if produced by him in a timely manner, would have substantially assisted defendants in preparation for the trial, both by way of defense as to certain claims and as to their counsel's ability to cross-examine [Joachim] effectively."

The trial justice then analyzed Joachim's asserted reasons for vacating the judgment against the various provisions of Rule 60(b). In so doing, the trial justice noted that "the belated document dump essentially at the end of plaintiff's case in chief made it impossible for the defendants, not having had access to portions of the material, to have a fair trial * * *." Accordingly, the trial justice denied Joachim's motion to vacate the earlier judgment. On April 22, 2013, judgment was entered on the motion to vacate, from which Joachim filed a timely notice of appeal. That appeal was consolidated with Joachim's appeal of the underlying Rule 37 dismissal.

## II

### Standard of Review

"This [C]ourt will reverse the decision of a trial justice to impose a sanction under Rule 37 for noncompliance with a discovery rule or order only upon a showing of an abuse of discretion." Mumford v. Lewiss, 681 A.2d 914, 916 (R.I. 1996). "We will find an abuse of discretion only when a motion justice has dismissed an action 'in the absence of evidence demonstrating persistent refusal, defiance or bad faith.'" Flanagan v. Blair, 882 A.2d 569, 573 (R.I. 2005) (quoting Travelers Insurance Co. v. Builders Resource Corp., 785 A.2d 568, 569 (R.I. 2001) (mem.)).

Similarly, "[i]t is well-settled that '[a] Rule 60(b) motion to vacate is addressed to the trial justice's sound judicial discretion and will not be disturbed on appeal, absent a showing of abuse of discretion.'" Turacova v. DeThomas, 45 A.3d 509, 514 (R.I. 2012) (quoting Yi Gu v. Rhode Island Public Transit Authority, 38 A.3d 1093, 1099 (R.I. 2012)).

## III

### Discussion

Before proceeding to the merits, we pause to address a threshold matter: whether Joachim's appeals are properly before us. Specifically, defendants contend that the Superior Court lacked jurisdiction to hear the Rule 60(b) motion to vacate. In the alternative, defendants argue that this Court should dismiss Joachim's direct appeal because—according to defendants—his election to proceed with a motion to vacate mooted his direct appeal. However, because we conclude that the trial justice did not abuse his discretion in dismissing the case or in denying Joachim's motion to vacate, we need not opine as to either of the defendants' arguments on these points.

- 6 -

## A.  Rule 37 Dismissal

The thrust of Joachim's appeal is an attack on the trial justice's sanction of dismissal pursuant to Rule 37(b).  Within this claim, Joachim presents a potpourri of arguments. Specifically, Joachim contends that the trial justice committed an error of law in dismissing his claim because Rule 37(b) sanctions must be predicated upon a party's violation of a court order. In addition, Joachim asseverates that the trial justice abused his discretion because (i) he made no finding that Joachim's conduct was willful, intentional, or in flagrant bad faith; (ii) he made no finding that Joachim's late production of the documents unfairly prejudiced defendants; (iii) the dismissal of his claim without affording him an opportunity for a hearing on the merits of his case flew in the face of the due process clause of the Fifth Amendment to the United States Constitution; and (iv) a clear and convincing evidence standard should have been applied with respect to the trial justice's order of dismissal.[5]

We turn first to Joachim's assertion that violation of a court order is a prerequisite to a trial justice's imposition of sanctions under Rule 37(b).  "Like questions of statutory construction, the interpretation of court rules of procedure is a legal question for the court" and, thus, is reviewed by this Court de novo.  McDonough v. McDonough, 962 A.2d 47, 54 (R.I. 2009).

Rule 37 provides the Superior Court with the tools necessary to achieve a smooth functioning of the discovery process by allowing the trial justice to enter orders for failing to

---

[5] We decline to address this last argument that the trial justice erred by not applying a clear and convincing evidence standard to his order of dismissal.  This contention was not advanced before the trial justice and, in accordance with our well-settled raise-or-waive rule, the argument is deemed to be waived.  See Peloquin v. Haven Health Center of Greenville, LLC, 61 A.3d 419, 430-31 (R.I. 2013).  Further, this Court has never required such a burden of proof under these circumstances, and so the trial justice could not have been expected to apply such a standard sua sponte.

comply with discovery demands and to sanction a noncompliant party. This assortment of tools provided by Rule 37 includes (i) permitting a party to file a motion for an order compelling discovery and (ii) providing the trial justice with authority to sanction a party for failing to comply with a court order, attend a deposition, serve answers to interrogatories, or respond to a request for inspection.

Rule 37(b)(2)(C) provides, in pertinent part, that: "If a party * * * refuses to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court may make such orders and enter such judgment in regard to the failure or refusal as are just, and among others the following: * * * a final judgment dismissing the action or proceeding or any part thereof * * *." In reading this language, it becomes inescapable that in order to implicate Rule 37(b)(2), a party must engage in conduct that amounts to a "refus[al] to obey an order to provide or permit discovery." Here, it is undisputed that there was no order compelling Joachim to produce any of the late-disclosed documents. Thus, without an "order to provide or permit discovery," Rule 37(b)(2) is inoperative. [6]

However, our analysis does not stop there: It is well-settled that "this Court can affirm the Superior Court's judgment on grounds other than those relied upon by the trial justice." Berman v. Sitrin, 991 A.2d 1038, 1043 (R.I. 2010). While Rule 37(b)(2) requires a prior order for dismissal, this is not the only weapon in a trial justice's arsenal to protect against abuse of the discovery process. Rule 37(d) presents an avenue for the trial justice to impose sanctions

---

[6] The language surrounding the sanction provision also confirms that an order is a prerequisite to the imposition of such sanctions. For example, the provision authorizing the imposition of costs and fees, also within Rule 37(b)(2)(E) of the Superior Court Rules of Civil Procedure, explicitly states that "the court may require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure * * *." (Emphasis added.)

without the requirement that the party violate a court order.[7]  Specifically, Rule 37(d)(3) provides, in pertinent part, that:

> "If a party * * * fails * * * to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court on motion may make such orders in regard to the failure as are just, and among others the court may take any action authorized under subparagraph (A), (B) and (C) of subdivision (b)(2) of this rule."

To be deemed to have failed to serve a written response, a party need not fail to respond entirely; instead, "an evasive or incomplete answer or response is to be treated as a failure to answer or respond."  Aguayo v. D'Amico, 981 A.2d 1016, 1017 (R.I. 2009) (mem.) (quoting Rule 37(a)(3)).  At oral argument, Joachim conceded that his failure to turn over some of the documents that were part of the mid-trial document dump constituted a discovery violation.  Thus, even without having violated a court order, Joachim's incomplete discovery response placed him within the realm of Rule 37(d); and, therefore, it was within the trial justice's discretion to impose sanctions.

Having determined that the trial justice had sufficient authority upon which to ground the imposition of sanctions, we turn next to evaluate the specific one imposed and whether that sanction was within his discretion.  We reiterate that we will find an abuse of discretion only when a motion justice has dismissed an action "in the absence of evidence demonstrating persistent refusal, defiance or bad faith."  Flanagan, 882 A.2d at 573 (quoting Travelers Insurance Co., 785 A.2d at 569).  Here, Joachim acknowledged at oral argument that there had

---

[7] In addition, this Court has held that, under certain circumstances, a trial justice has inherent authority to impose a sanction of dismissal with prejudice.  See Lett v. Providence Journal Co., 798 A.2d 355, 365 (R.I. 2002) (holding that "trial courts possess the inherent authority to protect their integrity by sanctioning any fraudulent conduct by litigants that is directed toward the court itself or its processes, as informed by the procedures and sanctions available to the court and to the parties under Rules 11 and 37.").  However, because we conclude that the trial justice had authority to impose sanctions pursuant to Rule 37(d), we need not determine whether the trial justice had inherent authority to impose sanctions in the current instance.

been a discovery violation, in that he failed to turn over certain handwritten notes that should have been produced during discovery.[8]  Importantly, the discovery violation involved in this case was no insignificant transgression.  According to Joachim, the responsive documents at issue were overlooked throughout discovery because they had been misfiled along with his files from another business.  Over a weekend during the middle of trial, Joachim discovered the documents and turned them over to his attorney the following Monday morning.  But, instead of giving the documents to defendants or at least disclosing their existence to the court at that time, Joachim proceeded through trial on Monday and into Tuesday, the fifth day of trial.  It was only after plaintiff's attorney attempted to use some of the documents[9] during his redirect examination of Joachim (and after defendants' cross-examination thereof) that the existence of the documents was revealed to defendants and the trial justice.  Such conduct presents a brazen defiance of the discovery rules and a disregard for the purpose of such rules, which serve "'to prevent trial by ambush' and 'to enable litigants to prepare for trial free from the elements of surprise and concealment so that judgments can rest upon the merits of the case rather than the skill and maneuvering of counsel.'" Narragansett Electric Co. v. Carbone, 898 A.2d 87, 95 (R.I. 2006) (quoting Neri v. Nationwide Mutual Fire Insurance Co., 719 A.2d 1150, 1152 (R.I. 1998)).  In appropriate cases, a trial justice must have the ability to protect the integrity of the judicial system by penalizing those whose conduct may warrant dismissal and deterring others from engaging in similar conduct.  See Lett v. Providence Journal Co., 798 A.2d 355, 365 (R.I. 2002);

---

[8] In addition, the trial justice found that "[t]he [c]ourt clearly does not believe that the plaintiff seriously undertook the [discovery] responsibilities that were his."

[9] Notably, plaintiff's counsel asked Joachim to identify three pages of documents and, at that point, defense counsel indicated that he had never seen the documents before.  It was not until the trial justice ordered that all of the documents be turned over that Joachim produced the full 155-page volume of documents to defendants.  We are deeply troubled by plaintiff's delay in disclosing these documents after receipt and by the piecemeal manner in which the documents were ultimately disclosed.

see also National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976) ("[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."). Where, as here, the plaintiff flouts the discovery rules and he appears to be less than forthcoming upon discovery of such violation, the ultimate sanction of dismissal with prejudice is warranted. Thus, we conclude that the trial justice did not abuse his discretion in selecting dismissal with prejudice as an appropriate sanction.

Joachim next contends that the trial justice abused his discretion in ordering the dismissal of his claim because he made no finding that Joachim's late production unfairly prejudiced defendants. To the extent that an assessment of prejudice may be warranted, a trial justice certainly need not use any magic words or talismanic incantations in performing this task. Here, while the trial justice did not specifically use the word "prejudice" in his analysis, he nevertheless took into account the effect of the discovery violation on defendants' case. Specifically, the trial justice found that "defendants unfortunately have been denied tools which would have enabled them to have had a fair trial." In support, he stated that defendants "have been denied a fair trial because information contained in the various documents to which I have referred would have permitted them to properly cross-examin[e] plaintiff with respect to a multitude of issues to which he testified * * *." In addition, the trial justice considered whether the detrimental position caused by the late disclosure could be mitigated, stating that defendants "tell[] us that the bell cannot be un-rung by bringing the jury back and having them hear further and additional testimony. And with that, * * * the [c]ourt must agree." Thus, the record belies

- 11 -

Joachim's assertion that the trial justice did not consider the prejudice to defendants in determining that dismissal of his claim was warranted.

Finally, Joachim contends that the trial justice's dismissal of his claim without affording him an opportunity for a hearing on the merits of his case flew in the face of the due process clause of the Fifth Amendment to the United States Constitution. We need not tarry. In assessing whether a party is denied procedural due process, the inquiry to be made is "whether the offending party was given sufficient notice and opportunity to explain its noncompliance or argue for a lesser penalty." Malloy v. WM Specialty Mortgage LLC, 512 F.3d 23, 26 (1st Cir. 2008). Here, Joachim was given an extensive opportunity to argue against dismissal under Rule 37. Moreover, Joachim was permitted to testify regarding the late production of the documents prior to the trial justice's decision on the Rule 37 motion. Therefore, Joachim's argument that he was denied due process is wholly unsubstantiated.[10]

Having disposed of the assortment of arguments presented by Joachim in his direct appeal, we conclude that the trial justice did not err in dismissing Joachim's claim with prejudice pursuant to Rule 37.

### B. Rule 60(b) Motion to Vacate

Joachim's next collection of arguments attacks the trial justice's denial of his Rule 60(b) motion to vacate. We reiterate that it is contested whether the Superior Court had jurisdiction to entertain this motion, but nevertheless decline to consider that issue because we conclude that, in any event, Joachim's motion to vacate was meritless. On appeal, Joachim contends that the trial justice abused his discretion in denying (i) Rule 60(b)(2) relief because newly discovered

---

[10] In addition, Joachim failed to advance this procedural due process argument before the trial justice and, thus, such failure may have resulted in its being deemed waived. See Peloquin, 61 A.3d at 430-31.

- 12 -

evidence proves that defendants were not prejudiced by Joachim's late production of certain bank records; (ii) Rule 60(b)(3) relief because defendants made misrepresentations during the hearing on the Rule 37 motion; and (iii) Rule 60(b)(6) relief because the sanction of dismissal with prejudice was excessive and disproportionate. Each of these arguments is unavailing and easily dismissed. We explain briefly.

Joachim first contends that certain bank records constituted "newly discovered evidence" warranting relief under Rule 60(b)(2). Rule 60(b)(2) provides that the court may relieve a party from a final judgment based upon "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Here, final judgment entered with respect to the Rule 37 motion on July 23, 2012. Joachim was required to file a new trial motion within ten days of July 23, 2012, and, thus, evidence could be considered "newly discovered" for purposes of Rule 60(b)(2) only if it could not have, with due diligence, been discovered prior to such a date. Yet, Joachim's own affidavit provides that on May 7, 2012, he visited a Bank of America branch, at which time he obtained copies of two signature cards that he now argues should offer him relief under Rule 60(b)(2). This admission shows that these documents were obtained by Joachim before final judgment entered, and, thus, well before the expiration of the ten-day period for filing a motion for a new trial. Accordingly, Joachim's argument must fail.

Similarly, there is no support for Joachim's argument that defendants made misrepresentations during the hearing on the Rule 37 motion and that Rule 60(b)(3) should provide relief. Rule 60(b)(3) requires a showing of "[f]raud [or] misrepresentation * * * of an adverse party." The trial justice disagreed that anything in defendants' arguments was a misrepresentation and summarily dismissed Joachim's argument that he had been "bamboozled"

- 13 -

into rendering his decision in defendants' favor. Such a decision is vested within the trial justice's sound discretion. See Turacova, 45 A.3d at 514. If more were needed—and we do not think that it is—the alleged "misrepresentations" were presented in argument by defense counsel and can be most accurately categorized as his view of the evidence, rather than misrepresentations of the facts. See Pari v. Pari, 558 A.2d 632, 637 (R.I. 1989) ("The discrepancies [the] defendant insists are misrepresentations are really the different views of the evidence that arise between adverse parties."). Thus, we find Joachim's argument based upon Rule 60(b)(3) to be unconvincing.

Joachim's final point of contention is that the dismissal of his claims should have been vacated under Rule 60(b)(6) because such a sanction was excessive and disproportionate. Rule 60(b)(6) provides that the court may relieve a party from a final judgment for "[a]ny other reason justifying relief from the operation of the judgment." Despite the broad language of the rule, this Court has noted that it is not intended to be a "catchall," but rather should be applied only where "there has been a showing by appropriate evidence of circumstances that would establish a uniqueness that puts the case outside of the normal and usual circumstances accompanying failures to comply with the rules." Bailey v. Algonquin Gas Transmission Co., 788 A.2d 478, 486 (R.I. 2002) (quoting Greco v. Safeco Insurance Company of America, 107 R.I. 195, 198, 266 A.2d 50, 52 (1970)). Joachim has not set forth any argument to suggest that the circumstances of this case are anything beyond a run-of-the-mill disagreement with the trial justice's decision. Indeed, Joachim's argument with regard to the trial justice's error in denying his Rule 60(b)(6) motion to vacate mirrors the argument that he presents in his Rule 37 direct appeal. "A motion for relief from judgment cannot be used as a substitute for an appeal." Gray v. Stillman White Co., 522 A.2d 737, 740 (R.I. 1987). "An appeal from the denial of such a

- 14 -

motion raises for review only the order denying relief and not the underlying judgment." <u>Id.</u> Therefore, because in his Rule 60(b)(6) motion Joachim merely reasserted the arguments made with respect to the underlying judgment, his appeal with respect to his Rule 60(b)(6) claim is denied.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    Bryan Joachim v. Straight Line Productions, LLC et al.

**CASE NO:**    No. 2013-149-Appeal.
No. 2013-227-Appeal.
(PC 09-1272)

**COURT:**    Supreme Court

**DATE OPINION FILED:**  May 6, 2016

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Michael A. Silverstein

**ATTORNEYS ON APPEAL:**

For Plaintiff:   Bryan Joachim, Pro Se

For Defendants:  Thomas R. Noel, Esq.
                 John R. Harrington, Esq.