**PLEASANT MANAGEMENT, LLC**

v.

**Maria CARRASCO[1] et al.**

**No. 2003–470–Appeal.**

Supreme Court of Rhode Island.

April 12, 2005.

---

**1.** The spelling of Carrasco's last name is a mild source of confusion. Almost all of the lower court papers spell her name Carraco, without the "s." She signed the check offered into evidence with a different last name: "Sarit." In the papers submitted to this Court, however, her name is spelled Carrasco, and it is that spelling we will use here.

Steven G. Wright, for Petitioner.

Lauren E. Jones, Providence, for Respondent.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION.

### PER CURIAM.

The defendants, Maria Carrasco (Carrasco) and her husband Jose Ortega (collectively defendants), appeal from the denial of their motion to vacate a default decree that foreclosed their right to redeem ownership of a tenement house currently owned by the plaintiff, Pleasant Management, LLC (plaintiff). This case came before the Supreme Court for oral argument on March 8, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons set forth below, we vacate the decree of the Superior Court.

## I

### Facts and Travel

The defendants owned a tenement house at 31 Atlantic Avenue in Providence until plaintiff purchased the building at a tax sale on November 10, 1999. In response to plaintiff's petition to foreclose on defendants' rights of redemption, the parties entered into a redemption agreement on March 19, 2002. The agreement provided that defendants would repay $5,300 at a 12 percent interest rate in $200 monthly installments. If defendants defaulted, plaintiff would foreclose on the defendants' right to redeem the property. The record reveals that the Superior Court entered a decree against defendants for violation of the agreement in April 2002, only to vacate that decree in June that same year.

The plaintiff again petitioned the Superior Court alleging a violation of the redemption agreement in March 2003. It notified defendants and their counsel of a hearing, which was scheduled for April 10, 2003. Carrasco personally contacted counsel for plaintiff by phone and asked him to redeposit two checks that had been dishonored by the bank, which he agreed to do. Believing the matter resolved, defendants did not attend the hearing on April 10, 2003, and the Superior Court entered a default decree foreclosing defendants' right to redeem the house. A letter from plaintiff's counsel to defendants after that hearing chronicled the events that led to the default decree:

"At the end of March I sent you, Maria Carraco [*sic*], and your attorney at [*sic*] notice of a hearing on this matter. When Maria got the notice she called me and explained that she had fixed the checking account. I told her that I would attempt to redeposit the checks and that if they did not clear I would see her at the hearing. One of the checks cleared, the other did not. No one representing your interest showed at the hearing and a final decree entered foreclosing all the rights to redeem the property."

The defendants then, on May 8, 2003, moved to vacate the default decree on the grounds that they believed the matter had been resolved after the telephone conversation with plaintiff's counsel. The motion justice, after hearing testimony from the bank clerk who had written "NSF" on the check that did not "clear," denied the motion. The motion justice said the letter did "nothing to advance the cause" of defendants' motion to vacate. The defendants appeal.

## II

### Analysis

■ Motions to vacate a decree, much like motions to vacate a judgment, are "left to the sound discretion of the motion justice and will not be disturbed on appeal unless an abuse of discretion or error of law is shown." *Labossiere v. Berstein*, 810 A.2d 210, 213 (R.I.2002). This deferential review, however, " 'cannot be equated with no review at all.' " *The Astors' Beechwood v. Peoples Coal Co.*, 659 A.2d 1109, 1115 (R.I.1995) (reversing the grant of a motion to vacate).

■ General Laws 1956 § 9–21–2(a) provides that "upon such terms as are just" a court may vacate a decree upon a showing of "[m]istake, inadvertence, surprise, or excusable neglect."[2] The narrow

**2.** The statute provides other grounds for vacating a decree, none of which applies to this case. We also note that this motion to vacate is governed by G.L.1956 § 9–21–2, rather than the virtually identical Rule 60(b) of the Superior Court Rules of Civil Procedure, because those rules do not apply to "[p]etitions for foreclosure of redemption of interests in land sold for nonpayment of taxes." Rule 81(a)(2) of the Superior Court Rules of Civil Procedure; *see also Kildeer Realty v. Brewster Realty Corp.*, 826 A.2d 961, 963 (R.I.2003).

Furthermore, we hold that § 9–21–2, rather than the more narrow G.L.1956 § 44–9–24, provides the procedural grounds for vacating the default decree in this case. Section 44–9–24 reads:

"The title conveyed by a tax collector's deed shall be absolute after foreclosure of the right of redemption by decree of the superior court as provided in this chapter. Notwithstanding the rules of civil procedure or the provisions of chapter 21 of title 9, no decree shall be vacated except in a separate action instituted within one year following entry of the decree and in no event for any reason, later than one year following the entry of decree. Furthermore, the action to vacate shall only be instituted for inadequacy of notice amounting to a denial of due process or for the invalidity of the tax sale. The superior court shall have exclusive jurisdiction of the foreclosure of all rights of redemption from titles conveyed by a tax

question before us is whether defendants' failure to appear at the hearing on April 10, 2003 suffices as excusable neglect under § 9–21–2.[3] The gravamen of defendants' argument, both to the Superior Court and again on appeal, is they did not attend the April 10 hearing because they relied on Carrasco's phone conversation with plaintiff's counsel.[4] The plaintiff counters that opposing counsel had no affirmative duty to contact defendants after he attempted to redeposit the checks. Both arguments overlook a well-established legal rule that guides our analysis.

■ Article V, Rule 4.2 of the Supreme Court Rules of Professional Conduct expressly forbids communication between an attorney and an opposing party represented by counsel. This anti-contact rule reads:

> "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." *Id.*

This rule applies even when the adverse party initiates the communication. *See*

ABA Committee on Ethics and Professional Responsibilities, Formal Op. 95–396 at 331 (1995). The letter written by plaintiff's counsel clearly establishes that a phone conversation took place between him and Carrasco and that plaintiff's counsel clearly was aware that defendants were represented by another lawyer. Thus, plaintiff's counsel had an affirmative duty under the anti-contact rule to decline to take Carrasco's phone call; he should have instructed her to communicate with him only through her counsel. By engaging in a substantive phone call with Carrasco, the attorney violated the anti-contact rule.

This rule has been designed, among other reasons, to "safeguard the client-lawyer relationship from interference by adverse counsel." ABA Formal Opinion at 334. In this case, confusion reigned in the wake of the violation of the anti-contact rule. The defendants believed that plaintiff's counsel would notify them if the checks did not clear and, therefore, they did not appear at the hearing when they did not hear from him. The violation of the anti-contact rule committed by plaintiff's counsel led to the issuance of a default decree in his client's favor.[5] Put differently, had

---

collector's deed, and the foreclosure proceedings shall follow the course of equity in a proceeding provided for in §§ 44–9–25—44–9–33."

Although the statute references foreclosing redemption rights generally, it does not expressly mention the foreclosure of rights of redemption pursuant to a redemption agreement like the one the parties entered into in this case. We have recently reiterated that we will resolve any statutory ambiguities in favor of the taxpayer. *Sycamore Properties, LLC v. Tabriz Realty, LLC*, 870 A.2d 424, 426 (R.I.2005). In the context of this case, the parties were seeking to enforce a contract in the form of a redemption agreement. Thus, our holding in *Sycamore* is inapplicable.

3. The motion to vacate the decree was well within the one-year window established by § 9–21–2(b).

4. The plaintiff asserted in its brief and again at oral argument that defendants argue novel issues for the first time on appeal. The defendants, however, based their motion to vacate in the Superior Court on the phone conversation between defendants and plaintiff's counsel. The "raise-or-waive rule" does not bar defendants' arguments to this court. *In re Ephraim L.*, 862 A.2d 196, 201 (R.I.2004).

5. We do not suggest that plaintiff's counsel deliberately deceived defendants so that they would not attend the hearing. In fact, the attempt by opposing counsel to redeposit the checks suggests an intention to work with defendants before the hearing in order to rectify the situation. The anti-contact rule, however, creates a strict liability standard and, thus, counsel's initial good intentions are not relevant to the inquiry as to whether the violation occurred.

plaintiff's counsel abided by the anti-contact rule and conversed only with defendants' counsel, then the confusion about the necessity for appearing in court probably would have been avoided. We are most reluctant to let the default decree stand because it would allow plaintiff to benefit from the improper conduct of its attorney.

Accordingly, the violation of the anti-contact rule clearly supports the defendants' argument that the default decree foreclosing their redemption rights should be vacated on the grounds of excusable neglect. The motion justice, therefore, erred as a matter of law in finding that the letter, as evidence of the phone conversation that constituted the violation of the anti-contact rule, did "nothing to advance the cause" of the defendants' motion to vacate. Since there are few actual details of the phone conversation, we remand for a determination of whether the plaintiff's counsel's violation of the anti-contact rule amounted to excusable neglect pursuant to § 9–21–2.[6]

### Conclusion

For the foregoing reasons, we vacate the decree of the Superior Court and remand the case for further proceedings not inconsistent with this opinion. The record shall be returned to the Superior Court.

---

**6.** On remand, the lower court should be mindful of the Anglo–American tradition relating to equity and forfeitures. Adopting a deep-rooted English common law rule of equity, this Court has forthrightly declared that "equity abhors and *will relieve* against forfeitures" because " '[t]he sale of land for taxes is the nearest approach to tyranny that exists in a free government.' " *Albertson v. Leca,* 447 A.2d 383, 387, 388 (R.I.1982) (quoting 2 Blackwell, *A Practical Treatise on the Power to Sell Land for the Nonpayment of Taxes* § 728 at 683 (5th ed. 1889)) (emphasis added); *see also ABAR Associates v. Luna,* 870 A.2d 990, 994 (R.I. 2005) (quoting *Albertson* for this proposition). In the *Albertson* case, we contemplated a factual scenario similar to the present one, and we commented as follows:

"The inequity of the owner's inordinate loss is often matched by the inequity of the tax-sale purchaser's inordinate gain. For the relatively small sum that the owner was unable to pay, the purchaser can acquire the entire estate. Thus, the purchaser may 'obtain acres for cents,' achieving through speculation what another has lost through misfortune." *Albertson,* 447 A.2d at 388 (quoting *Lessee of Hughey v. Horrel & Co.,* 2 Ohio 231, 233 (1826); and citing 4 Tiffany *The Law of Real Property* § 1248 at 1153 (3d ed. 1975)).

The benevolent jurisprudential philosophy that is summarized in the maxim that equity abhors a forfeiture shall continue to guide us in all appropriate factual situations.