**PLEASANT MANAGEMENT, LLC**

v.

**Maria CARRASCO et al.**

No. 2006–301–Appeal.

Supreme Court of Rhode Island.

Nov. 24, 2008.

Michael Gardiner, Providence, for Plaintiff.

Lauren Jones, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The plaintiff, Pleasant Management, LLC, appeals from a Superior Court judgment granting a motion to vacate a default

decree entered against Maria Carrasco and her husband, Jose Ortega (collectively defendants), that foreclosed the defendants' right to redeem their property that the plaintiff purchased at a tax sale. The judgment also established a redemption of $4,371 for the defendants, awarded the plaintiff $1,000 in attorneys' fees, and ordered the plaintiff to execute a deed to the property conveying it back to the defendants. This case came before the Supreme Court for oral argument on September 22, 2008, pursuant to an order directing the parties to appear and show cause why the issues in this appeal should not summarily be decided. After hearing the arguments advanced by the parties and examining the memoranda they submitted, we are of the opinion that cause has not been shown. Accordingly, we shall decide the appeal at this time without further briefing or argument. For the reasons set forth below, we affirm the judgment of the Superior Court.

### Facts and Procedural History

It would be an understatement to describe the life and travel of this case as tortuous. The facts in this matter are set forth fully in *Pleasant Management, LLC v. Carrasco*, 870 A.2d 443 (R.I.2005) (*Pleasant Management I*). The defen-

dants owned a tenement house at 31 Atlantic Avenue in Providence. They apparently fell behind in their sewage usage fees owed to the Narragansett Bay Commission, and that agency conducted a tax sale of their property on November 10, 1999. The plaintiff purchased the property at the tax sale, and, after the requisite statutory time period had passed, plaintiff filed a petition to foreclose on defendants' right of redemption.[1] Before the Superior Court decided the petition, however, the parties entered into a court-approved redemption agreement in which defendants were allowed to redeem the property for $5,300, at a 12 percent interest rate, payable in monthly installments of $200.[2] The agreement provided that if defendants defaulted, plaintiff could foreclose on defendants' right to redeem the property. In March 2003, plaintiff alleged that defendants had violated the agreement by not complying with their payment obligations. In a court filing, plaintiff's counsel, Steven Murray, asked that judgment be entered against defendants and that their right of redemption be foreclosed. The Superior Court scheduled a hearing for April 10, 2003. On April 1, 2003, Carrasco received the notice of the hearing. She called Murray on the telephone and told him she would go to the bank and deposit sufficient funds into her

---

1. General Laws 1956 § 44–9–25(a) provides in pertinent part: "After one year from a sale of land for taxes, except as provided in §§ 44–9–19–44–9–22, whoever then holds the acquired title may bring a petition in the superior court for the foreclosure of all rights of redemption under the title." The defendants objected to plaintiff's petition to foreclose their right of redemption. They contended that they did not receive notice of the tax sale from the City of Providence or from plaintiff's counsel. Therefore, they alleged, the lien filed in the land evidence records was invalid.

2. The agreement was entitled "Order Entering Final Judgement [*sic*] Pursuant to 44–9–29." By signing the agreement, and not con-

testing the validity of the sale, defendants waived any defenses, including lack of notice with respect to the tax sale. General Laws 1956 § 44–9–31 provides in pertinent part:

"If a person claiming an interest desires to raise any question concerning the validity of a tax title, the person shall do so by answer filed in the proceeding on or before the return day, * * * or else be forever barred from contesting or raising the question in any other proceeding. He or she shall also file specifications setting forth the matters upon which he or she relies to defeat the title; and unless the specifications are filed, * * * [they] shall be deemed to have been waived."

account to cover what she thought was one outstanding check. There were, however, two such checks. Later that day, Murray went to the bank; however, he deposited only one of the two checks in his possession because he had discovered that there still was insufficient money in the account to cover the second check.[3] The defendants apparently believed that the matter was resolved after Carrasco's conversation with Murray and the subsequent deposit of funds into her account. Carrasco testified that Murray told her to "forget about court." She said that based on this belief, neither defendants nor the person who was then their attorney attended the hearing on April 10, 2003.[4] Murray, however, pressed on. Because no one appeared to contest the motion to foreclose the right to redeem the property, the Superior Court entered a default decree against defendants.[5] Sometime thereafter, defendants filed a motion to vacate the decree. They alleged that they did not attend the hearing because they relied on what they believed to be Murray's assurances, during his telephone conversation with Carrasco, that the hearing would not proceed. Unpersuaded, the hearing justice denied the motion to vacate, and defendants timely appealed to this Court.

On April 12, 2005, this Court vacated the default decree and remanded the case for further proceedings in the Superior Court. *Pleasant Management I*, 870 A.2d at 447. Specifically, we held that Murray violated the anti-contact rule of Article V, Rule 4.2 of the Supreme Court Rules of Professional Conduct when he engaged in a substantive telephone conversation with Carrasco at a time that she was represented by counsel.[6] *Pleasant Management I*, 870

3. In late March 2003, before filling out the petition to foreclose defendants' right of redemption, Murray was unable to deposit two checks from defendants. However, it appears that at first Murray did not present the checks for negotiation because he first asked a bank employee whether there was sufficient money in defendants' account to cover the checks. The employee replied that there was not sufficient money, wrote "NSF" on the checks, and handed them back to Murray. On April 1, 2003, following his conversation with Carrasco, Murray returned to the bank and once again asked whether there was sufficient money in defendants' account to cover the two checks. At this point, one of the checks was deposited, but the second check was not. A bank employee then wrote "NSF" on that second check for the second time. In *Pleasant Management, LLC v. Carrasco*, 918 A.2d 213 (R.I.2007) (*Pleasant Management II*), we affirmed an order imposing sanctions against defendants' former counsel for alleging, without a sufficient basis in fact, that Murray committed fraud by writing "NSF" on the checks. *Id.* at 219. That issue, however, has no bearing on this appeal.

4. The defendants' former counsel testified that she did not attend the hearing because

Carrasco "said the problem was taken care of and that was it." She admitted that she never asked Murray whether the hearing had been postponed or cancelled.

5. After the hearing, Murray sent defendants a letter notifying them that his client owned the property. Shortly thereafter, plaintiff took control of the property and began collecting rents.

6. Article V, Rule 4.2 of the Supreme Court Rules of Professional Conduct provides:

"In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

In *Pleasant Management I*, we said: "[P]laintiff's counsel had an affirmative duty under the anti-contact rule to decline to take Carrasco's phone call; he should have instructed her to communicate with him only through her counsel. By engaging in a substantive phone call with Carrasco, the attorney violated the anti-contact rule." *Pleasant Management, LLC v. Carrasco*, 870 A.2d 443, 446 (R.I.2005).

A.2d at 446. We concluded that the violation of the anti-contact rule supported defendants' argument that the default decree entered against them foreclosing their redemption rights was a result of excusable neglect under G.L.1956 § 9–21–2.[7] *Pleasant Management I*, 870 A.2d at 447. Since we had been provided with a paucity of detail pertaining to the substance of Murray's telephone conversation with Carrasco, we remanded to the Superior Court for "a determination of whether plaintiff's counsel's violation of the anti-contact rule amounted to excusable neglect" under the statute. *Id.*

On remand, the Superior Court held an evidentiary hearing to further explore the details and surrounding circumstances of the telephone communication between Carrasco and Murray. However, to our dismay, our examination of the record reveals that the evidentiary hearing began with a review of whether or not Murray even violated the anti-contact rule. There was an inquiry into whether defendants' attorney gave Murray permission to speak with her client, an issue upon which we already had ruled in *Pleasant Management I*. On remand, defendants' former counsel testified that she never gave Murray permission to speak with her clients. Murray recalled things differently; he testified that the attorney called him on the telephone and gave him permission to speak with Carrasco.

Carrasco also testified on remand. According to her testimony, when she received notice of the hearing, she called Murray to inquire why she needed to appear in court. Murray told her it was because she had not paid the money owed to his client under the terms of the redemption agreement. She said that she told him that she would go to the bank to deposit sufficient funds to resolve the dispute. However, Carrasco testified that Murray never told her that there were two checks outstanding, and that is why she deposited only $200 into the account. Carrasco said that she asked Murray whether she needed to go back to court and that he said, "forget about court." She also said that after returning from the bank, she called Murray a second time and notified him that she had just made a deposit.

Murray acknowledged in his testimony that he spoke with Carrasco when she initially called him after she received notice of the hearing, but he denied that he ever had a second conversation with Carrasco later that day. Further, Murray testified that he never told Carrasco to "forget about court;" instead, he claimed he told her that he would return to the bank but that if the matter was not resolved he would see her at the hearing.

---

7. General Laws 1956 § 9–21–2(a) provides in pertinent part: "On motion and upon such terms as are just, a court may relieve a party or his or her legal representative from a final judgment, order, decree, or proceeding entered therein for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect." Section 9–21–2 is virtually identical to Rule 60(b) of the Superior Court Rules of Civil Procedure. The statute, rather than the rule, governed defendants' motion to vacate, because the Superior Court Rules of Civil Procedure do not apply to "[p]etitions for foreclosure of redemption of interests in land sold for nonpayment of taxes." Rule 81(a)(2) of the Superior Court Rules of Civil Procedure. Furthermore, we held that § 9–21–2 rather than G.L.1956 § 44–9–24 provided the procedural grounds for vacating the default decree because:

"Although the statute references foreclosing redemption rights generally, it does not expressly mention the foreclosure of rights of redemption pursuant to a redemption agreement like the one the parties entered into in this case. * * * In the context of this case, the parties were seeking to enforce a contract in the form of a redemption agreement." *Pleasant Management I*, 870 A.2d at 446.

He acknowledged that he did not tell Carrasco that he had two checks in his possession nor did he call defendants back to notify them that both of the checks were not deposited on that day and that as a result the hearing would proceed as scheduled.

It is apparent that the hearing justice was unclear with respect to the scope of our mandate. In *Pleasant Management I*, we held in no uncertain terms that Murray violated the anti-contact rule and we remanded the matter for a determination of whether or not that violation occasioned excusable neglect on defendants' part; *i.e.*, the court was to determine whether Murray's violation caused defendants not to appear at the hearing on April 10. In the face of our ruling, the hearing justice inexplicably found that Murray did not violate the anti-contact rule and that *his* conduct therefore did not amount to excusable neglect.[8] Then, embarking on a foray of his own, the hearing justice ruled that defendants were "victim[s] of ineffectiveness of counsel," because defendants' attorney did not contact Murray to ascertain whether the April 10 hearing would proceed as scheduled nor did she ultimately appear at the hearing. On that basis, the hearing justice concluded that the default should be vacated and defendants should be allowed the opportunity to redeem the property. However, the hearing justice noted that "equity must protect the interests of the plaintiffs who acted in good faith."[9] An order was entered that vacated the default decree and scheduled a hearing on the issue of redemption costs that defendants would be required to pay plaintiff.

The plaintiff contended that the total amount to redeem was $108,522.48. This figure included all the property taxes it had paid, plus interest, the amount of its expenditures for repairs and capital improvements, attorneys' fees, and rents collected by defendants.[10] On the other hand, defendants argued that the balance due under the original redemption agreement plus accrued interest should govern the redemption calculation. The hearing justice agreed with defendants and set a redemption fee of $4,371. Additionally, he awarded plaintiff $1,000 in attorneys' fees, and he gave the parties twenty-one days to complete the redemption. The defendants paid plaintiff $5,371 in late July 2006 and plaintiff, in return, conveyed the property to defendants by quitclaim deed. A final judgment then was entered, from which plaintiff timely appealed.

### Standard of Review

"Motions to vacate a decree, much like motions to vacate a judgment, are 'left to the sound discretion of the motion justice and will not be disturbed on appeal unless an abuse of discretion or error of law is shown.'" *Pleasant Management I*, 870 A.2d at 445 (quoting *Labossiere v.*

---

8. After ruling that he believed Murray's testimony that he had permission to speak with Carrasco and thus did not violate the anti-contact rule, the hearing justice said: "[M]y answer to the Supreme Court relative to the remand is that after conducting an evidentiary hearing I do not find that there was any excusable neglect on the part of Mr. Murray or that he did anything untoward to obtain the default judgment."

9. The hearing justice discussed the nature of the order about to enter and said: "I don't think that equity would allow the Carrascos [*sic*] to immediately get title and the plaintiff takes nothing, I think that there has to be some redemption here."

10. In a "Corrected Statement of Redemption Costs," plaintiff asserted that under G.L.1956 § 44–9–12, defendants owed plaintiff $49,300 in rents defendants collected from December 1, 2000, through May 1, 2003. It also asserted it was due more than $29,000 in general repairs and capital improvements and more than $25,000 in attorneys' fees.

*Berstein,* 810 A.2d 210, 213 (R.I.2002)); *see Pate v. Pate,* 97 R.I. 183, 188, 196 A.2d 723, 726 (1964) ("motions made pursuant to [§ 9–21–2] are addressed to the sound judicial discretion of the court, and unless it appears that the trial justice abused his discretion or made his determination on an error of law, that determination will not be disturbed by this court on review").

## Arguments Advanced on Appeal

To support its appeal, plaintiff argues that the Superior Court made numerous errors when it granted defendants' motion to vacate. First, plaintiff argues that the Superior Court exceeded the scope of this Court's mandate when it vacated the default decree. The plaintiff argues that once the hearing justice determined the issue concerning excusable neglect, the lower court had nothing left to decide, and defendants' motion to vacate should have been denied. Second, plaintiff asserts that the hearing justice improperly relieved defendants of their own attorney's negligence when he granted the motion to vacate. Third, it contends that because this matter is a statutory proceeding under § 9–21–2, the court improperly vacated the judgment on the basis of equitable principles. Fourth, plaintiff maintains that in the event that this Court agrees that the decree was vacated properly, the hearing justice nonetheless incorrectly assessed the redemption costs. The plaintiff asserts that it should have recovered all the property taxes it paid, plus interest, the amount of its expenditures for repairs and capital improvements, attorneys' fees, and rents defendants collected.

In response, defendants primarily rely on the doctrine of "acceptance of benefits." They contend that plaintiff waived its right to appeal because it accepted the redemption amounts ordered by the hearing justice and tendered the deed to defendants before final judgment was entered. They argue that the fact that plaintiff accepted payment before final judgment was entered rendered plaintiff's action voluntary rather than one done under legal compulsion, and thus plaintiff waived its right to appeal. Lastly, they contend that the hearing justice correctly established the redemption amount based on the original redemption agreement, plus accrued interest.

## Analysis

We said in *Pleasant Management I,* 870 A.2d at 446, that "confusion reigned in the wake of the violation of the anti-contact rule." Unfortunately, the hearing below only further clouds the landscape of this case, and we are disappointed that the lower court did not follow our direction and determine whether Murray's violation of the anti-contact rule occasioned excusable neglect by defendants to an extent sufficient to vacate the default.

## Mandate in *Pleasant Management I*

■ Since "[t]he existence of excusable neglect is a question of fact and must be established by evidence," *Cournoyer v. Doorley,* 697 A.2d 332, 333 (R.I.1997) (quoting *Graham Architectural Products Corp. v. M & J Construction Co.,* 492 A.2d 150, 151 (R.I.1985)), we instructed the Superior Court to determine whether such evidence existed in this case to support vacating the decree. *Pleasant Management I,* 870 A.2d at 447. On remand, the narrow issue for the Superior Court to decide was whether Murray's violation of the anti-contact rule led to excusable neglect on the part of defendants. Despite our ruling, the hearing justice disregarded this mandate and held an in-depth evidentiary hearing that ultimately led him to rule, in direct contradiction of our holding

in *Pleasant Management I,* that Murray did not violate the anti-contact rule.[11]

■ As we have stated in the past, "the opinions of this Court speak forthrightly and not by suggestion or innuendo." *Fracassa v. Doris,* 876 A.2d 506, 509 (R.I.2005). Nor is it "the role of the trial justice to attempt to read 'between the lines' of our decisions." *Id.* We have made "clear that the lower courts and administrative bodies that receive our remand orders may not exceed the scope of the remand or open up the proceeding to legal issues beyond the remand." *Willis v. Wall,* 941 A.2d 163, 166 (R.I.2008). The "mandate rule" can be summarized as follows:

"When a case has been once decided by this court on appeal, and remanded to the [Superior Court], whatever was before this court, and disposed of by its decree, is considered as finally settled. The [Superior Court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded. * * * But the [Superior Court] may consider and decide any matters left open by the mandate of this court." *United States v. Thrasher,* 483 F.3d 977, 981 (9th Cir.2007) (quoting *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255–56, 16 S.Ct. 291, 40 L.Ed. 414 (1895)); *see also RICO Corp. v. Town of Exeter,* 836 A.2d 212, 218 (R.I.2003) (noting that lower court "may not disregard the explicit directives" of an appellate court) (quoting *Tollett v. City of Kemah,* 285 F.3d 357, 364 (5th Cir. 2002)).

In our opinion, the hearing justice strayed from the mandate when he ruled that Murray did not violate the anti-contact rule and that defendants were "victim[s] of ineffectiveness of counsel" because of their attorney's neglect in her handling of this matter. We believe this to be clear error in light of our opinion and mandate in *Pleasant Management I.* These issues were simply not before the hearing justice.

### Excusable Neglect

Not only did the hearing justice err in his application of our mandate, but also he improperly applied the concept of excusable neglect. Apparently, he believed that we remanded for an investigation of whether Murray committed some improper act. This determination by the hearing justice was clearly misguided because we previously had opined that Murray did, in fact, violate the anti-contact rule. For the decree to be vacated, any excusable neglect would necessarily have been on the part of the defendants; they were the parties who were defaulted.[12] Whether

11. Following testimony from defendants' attorney about the events that precipitated defendants' failure to appear at the April 10 hearing, the hearing justice found Murray's testimony credible and said that he did not believe defendants' lawyer when she said that she never gave Murray permission to speak to her clients.

12. The hearing justice based his decision to vacate the default decree on his assessment that defendants were "victim[s] of ineffectiveness of counsel." He did not explicitly state that defendants' former counsel's conduct amounted to excusable neglect sufficient to vacate the default decree, however, his comments in the decision and the hearing to set redemption costs reflect his erroneous belief in that regard. He said: "I'll not go into the outcome of [the evidentiary] hearing other than to say that this Court found that Mr. Murray did nothing improper and that the

Murray committed an improper act was not relevant to the proper scope of inquiry, because that had already been determined by this Court.

■ The errors by the lower court in exceeding the scope of our remand and wrongly applying the concept of excusable neglect, while making our task more difficult, are not critical to our analysis today because this Court is free to "affirm a ruling on grounds other than those stated by the lower-court judge." *State v. Nordstrom*, 529 A.2d 107, 111 (R.I.1987) (citing *State v. Ibbison*, 448 A.2d 728, 733 (R.I. 1982)); *see O'Connell v. Bruce*, 710 A.2d 674, 675 n. 2 (R.I.1998) ("This Court may affirm the Superior Court's judgment on any ground without passing on the rationale actually relied upon by the Superior Court to justify its ruling."). Since the hearing below did not directly resolve our initial inquiry, we are left in a quandary quite similar to that in which we found ourselves in *Pleasant Management I*. In

that case we said that "the violation of the anti-contact rule clearly supports the defendants' argument that the default decree foreclosing their redemption rights should be vacated on the grounds of excusable neglect." *Pleasant Management I*, 870 A.2d at 447.

■ "It is well settled that unexplained neglect, whether by a party or its counsel, standing alone, will not automatically excuse noncompliance with orderly procedural requirements." *Jacksonbay Builders, Inc. v. Azarmi*, 869 A.2d 580, 584 (R.I. 2005) (quoting *Astors' Beechwood v. People Coal Co.*, 659 A.2d 1109, 1115 (R.I.1995)). This Court has described excusable neglect as:

"[A] failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or

problems connected with this situation could be attributed to the Carrascos' [*sic*] former attorney." He further said, "I found, and I want to be clear on this, excusable neglect or neglect, I should say, on the part of [defendants' counsel] that should not be an impediment to Ms. Carrasco and her husband in getting this property back." However, although we do not need to directly address the hearing justice's reasoning in granting the motion to vacate because we affirm the judgment on different grounds, we would be remiss if we did not point out the flawed reasoning behind his ruling. This Court long has recognized the "fundamental of agency law which imputes the neglect of an attorney in professional matters to his client and considers the omissions of the attorney as though they were the neglect of the client himself." *King v. Brown* 103 R.I. 154, 156, 235 A.2d 874, 875 (1967). Therefore:

"[A] client should not be relieved of a default judgment resulting from the failure of his selected counsel to comply with procedural requirements, unless it is first factually established that [the lawyer's] neglect

was occasioned by some extenuating circumstances of sufficient significance to render it excusable. Unexplained neglect, standing alone and without more, whether it be of a party or of his attorney, will not automatically excuse noncompliance with orderly procedures." *Id.* at 157, 235 A.2d at 875.

There were no extenuating circumstances in this case to excuse defendants' counsel's neglect in failing to contact Murray after his conversation with her client or her failure to attend the hearing. Therefore, that neglect was not excusable, and even if grossly negligent, it would be insufficient as a basis for vacating the default decree. *See Bailey v. Algonquin Gas Transmission Co.*, 788 A.2d 478, 488 (R.I.2002) (holding that an attorney's unexplained and willful conduct was imputed to his client and that his neglect was not so extraordinary as to justify vacating the default judgment entered against the client). As we said in *Bailey*, "[t]hat fundamental law of agency does not mutate merely because the viral strain of legal misconduct in a particular case has become so virulent as to constitute 'gross' negligence." *Id.* at 485.

accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party." *Id.* (quoting *Small Business Loan Fund Corp. v. Gallant,* 795 A.2d 531, 533 (R.I.2002)). In *Pari v. Pari,* 558 A.2d 632 (R.I.1989), we held that "[e]xcusable neglect that would qualify for relief from judgment is generally that course of conduct which a reasonably prudent person would take under similar circumstances." *Id.* at 635 (citing *Clergy and Laity Concerned v. Chicago Board of Education,* 586 F.Supp. 1408, 1410 (N.D.Ill.1984)).

Excusable neglect should be interpreted flexibly. *See Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 389, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The determination of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. 1489. "These include * * * the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Conetta v. National Hair Care Centers, Inc.,* 182 F.R.D. 403, 406 (D.R.I.1998) (quoting *Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489).

After a thorough review of the record, we conclude that the violation of the anti-contact rule led to excusable neglect by defendants because it caused them to fail to appear at the hearing. As we said in *Pleasant Management I,* 870 A.2d at 446–47:

"The violation of the anti-contact rule committed by plaintiff's counsel led to the issuance of a default decree in his client's favor. Put differently, had plaintiff's counsel abided by the anti-contact rule and conversed only with defendants' counsel, then the confusion about the necessity for appearing in court probably would have been avoided."

Rather than once again remanding this case to the Superior Court, we are confident that there is a sufficient ground for us to conclude that defendants have demonstrated excusable neglect sufficient to vacate the default.

Carrasco testified that Murray told her to "forget about court." Also, she transferred $200 from a savings account to a checking account because, based on her conversation with Murray, she believed that this would ensure that there would be sufficient funds in the account to avoid foreclosure of her right of redemption. We have no reason to believe that Murray's testimony was anything less than completely truthful, but it seems clear to us that the hearing justice entered the default decree as a direct consequence of the confusion arising from Murray's telephone conversation with Carrasco. As she swore in her affidavit:

"If I had been told by attorney Murray that one of our checks had not been honored, or that he intended to go to court on April 10, 2003, I would have been in court that day and would have arranged for our attorney to be there, too. I have attended all the other court hearings that have occurred in the case, both before and after April 10, 2003. The only reason I did not go to Court on April 10, 2003, was that attorney Murray told me to 'forget about the court' when I asked him about it on April 1, 2003."

In our opinion, it would be unduly harsh to conclude that defendants willfully disregarded their obligation to attend the hearing. This was not unexplained neglect; defendants' failure to attend the hearing seems to us to be a direct consequence of Carrasco's understanding of the situation

after her conversation with Murray, a conversation that never should have occurred. The anti-contact rule exists to avoid situations like this. The rule is in place to protect litigants who are represented by counsel and to prevent lawyers from gaining an unfair advantage for their clients over other represented parties. *See* Article V, Rule 4.2 of the Supreme Court Rules of Professional Conduct, comment 1. We believe that the confusion that resulted from Murray's violation of the anti-contact rule justifies a conclusion that there was excusable neglect by defendants.

### Defendants' Meritorious Defense

■ In cases involving an effort to set aside a default judgment on the grounds of excusable neglect, "it is a well-established rule that before relief is granted, the moving party must show the court that he has a prima facie meritorious defense which he desires in good faith to present at the trial." *Shannon v. Norman Block, Inc.*, 106 R.I. 124, 132, 256 A.2d 214, 219 (1969). After defendants proffered evidence that they had sufficient money in other accounts at Citizens Bank to cover not only the two checks that were the cause of this dispute, but indeed enough to satisfy the entire redemption amount, the hearing justice apparently was persuaded that defendants had met their burden of establishing a meritorious defense. In granting defendants' motion to vacate, the hearing justice said:

"If indeed there had been an April 10[th] hearing, and if indeed Ms. Carrasco had shown up and presented to this Court what has been recently displayed[,] * * * namely, that in one of her bank accounts at Citizens [Bank] she had approximately four or five thousand dollars, albeit not in the account that Mr. Murray had inquired about, it would have been a very rare day and a rare decision in this Court for a judge

not to say, well, pay up the balance you owe. Or worst case scenario, look, you've got $5,000, what are you doing paying off at the rate of [$]200 a month when you clearly [have] * * * enough money to pay if not the entire [$]5,000 in one check, a more substantial portion than the $200."

We do not believe that the hearing justice abused his discretion when he allowed defendants the opportunity to redeem the property.

### Redemption Amount

Finally, we turn to plaintiff's contention that the hearing justice erred when he assessed the redemption costs. The plaintiff contends that it was entitled to be made "whole" and that it should have recovered all the property taxes it paid, plus interest, the amount of its expenditures for repairs and capital improvements, attorneys' fees, as well as certain rents collected by defendants. The hearing justice disagreed and awarded plaintiff the amount it was entitled to under the redemption agreement, plus $1,000 in attorneys' fees.

In *Albertson v. Leca*, 447 A.2d 383 (R.I. 1982), this Court summarized the Rhode Island tax sale statute:

"The Rhode Island tax statute strikes a fair balance between the interests of the government and private property rights-the state may move quickly to obtain by sale the taxes due, but the owner has ample opportunity to redeem his real estate. The law provides that the taxes assessed on a parcel of real estate constitute a lien against the property. Section 44–9–1. If payment is overdue, the tax collector, after proper notice and advertisement, may sell the property or some portion of it at public auction for the amount of taxes and other costs due. Sections 44–9–8 and 44–9–9. One who

purchases property at a tax sale acquires a title that is contingent upon the owner's nonredemption. Section 44–9–12. The owner unconditionally may redeem the real estate at any time prior to the filing of a petition to foreclose the right of redemption. Section 44–9–21. Upon the filing of a foreclosure petition and an answer by the owner seeking redemption, a justice of the Superior Court will conduct a hearing to determine whether or not redemption should be granted. Sections 44–9–25 and 44–9–29. If redemption is denied, the purchaser's title becomes absolute. Section § 44–9–24. The purchaser may not file a foreclosure petition until one year after the date of the tax sale, and he has no right to the possession, rent, or profits of the property for that one-year period. Sections 44–9–25 and 44–9–12." *Albertson,* 447 A.2d at 388–89.

■ We do not disagree with the plaintiff's asseveration that G.L.1956 § 44–9–29 provides that the redeeming party, may, in the court's discretion, be allowed to redeem "upon payment to the petitioner of an amount sufficient to cover the original sum, costs, penalties, and all subsequent taxes, costs, and interest to which the petitioner may be entitled, together with the costs of the proceeding and counsel fee as the court deems reasonable." Section 44–9–29. However, the matter before us was not a typical redemption case under § 44–9–29. After the plaintiff first filed a petition to foreclose on the defendants' right of redemption, the parties, on March 19, 2002, entered into an agreement that controlled the terms of redemption. Therefore, when the hearing justice ordered redemption, he was not doing so in response to a petition to foreclose a right of redemption and subsequent answer as is typically the case under § 44–9–29. Instead, when the hearing justice vacated the default decree and ordered redemption, he simply put the parties back into their pre-default positions. Therefore, we are drawn to the inescapable conclusion that the terms of the redemption agreement controlled. That agreement contained no provisions regarding taxes, rents, capital improvements, or attorneys' fees. The hearing justice based his ruling on the specific facts of this case and awarded the plaintiff the balance due under the redemption agreement, plus accrued interest. Because we believe that the hearing justice did not err or abuse his discretion in assessing the redemption amounts, we affirm the judgment awarding the plaintiff $5,371.[13]

## Conclusion

Even though we hold that the hearing justice went beyond the bounds of our mandate, we nonetheless hold that there are sufficient grounds in the record to enable us to conclude that the defendants demonstrated the presence of excusable neglect sufficient to justify vacation of the default entered against them. We also hold that the hearing justice did not abuse his discretion when he ordered redemption and set the redemption amount. For these reasons, we affirm the judgment of the Superior Court. The papers in this case are remanded to the Superior Court.

---

**13.** Included in this amount is a $1,000 counsel fee. Although the redemption agreement is silent with respect to attorneys' fees, defendants did not file a cross-appeal of this award.