DECISION
This matter came on for hearing before Mr. Justice Lanphear on April 17, 2009: Rockland Trust Community Development Corporation II's and Rockland Trust Company's motion for relief from subordination, for determination of priority, and for permission to foreclose its mortgages, pursuant to the Rhode Island Mechanics' Lien Law. This Court's jurisdiction is pursuant to G.L. 1956 § 34-28-16.
 Facts and Travel
This case, as well as fourteen consolidated matters, involves a large mill renovation project along the Pawtuxet River in West Warwick, Rhode Island. The focus of the instant *Page 4 
motion is on one of the project's properties, specifically, 186 Providence Street, Lot 10 of Assessor's Plat No. 26, known as the Cotton Shed, which is a proposed retail use project.
After an action was instituted by Northern Site Contractors, Inc. to enforce a mechanics' lien against this property, the Superior Court Clerk issued citations to various persons or entities which may have interests in the property. Similar petitions against this property were subsequently filed, and additional citations issued. Rockland Trust Community Development Corporation II and Rockland Trust Company (hereinafter "Rockland"), the first and third mortgage holders on the Cotton Shed property, failed to timely respond to particular citations on or before the return date of October 30, 2008.[1] Rockland first filed an answer, entry of appearance, and filing of claim, on or about January 13, 2009, in the actions brought by Rustic Fire Prevention, Inc. ("Rustic," K.M. 2008-1396) and Roofing Concepts, Inc. ("Roofing Concepts," K.M. 2008-1445). Rockland's untimely responses to Northern Site Contractors, Inc. ("Northern Site," K.M. 2008-1190) and Sheridan Electric, Inc. ("Sheridan," K.M. 2008-1248) were filed shortly thereafter.
Rockland's instant motion seeks relief from subordination pursuant to G.L. 1956 § 34-28-16 of the Mechanics' Lien Law and Super. R. Civ. P. Rule 60(b); a determination of its priority as the first two lien holders; and permission to foreclose under § 34-28-16.1.[2] Rockland requests relief from subordination only in the actions brought by Northern Site, Sheridan, Rustic, and Roofing Concepts, to which Rockland did not timely answer. *Page 5 
Northern Site, Sheridan, Roofing Concepts, and JESMAC, Inc. filed objections.[3] After carefully considering the written submissions by the parties and hearing extensive testimony and argument on April 17, 2009, the issue of whether Rockland is entitled to relief pursuant to Rule 60(b) is ripe for decision. Rockland's constitutional claims have been preserved and bifurcated for later hearing.
In a sworn affidavit attached to its motion, Jonathan Neuner, Rockland's First Vice President and only witness at the hearing, stated that he recalled receiving certain citations involving the Cotton Shed but:
 did not believe it necessary to take further action for the following reasons: (1) Rockland had ceased making advances to [Defendant] SBER in July, 2008 and it was [his] understanding that only advances made after a notice of lien was recorded on title would be subordinate to that lien; (2) [He] had no objection to contractor's filing mechanic's lien actions on the Property, as it was [his] understanding that such liens would be subordinate to the Rockland entities' First Mortgage, Second Mortgage and Third Mortgage; (3) Rockland Trust is a Massachusetts bank with the majority of its client base in Massachusetts and whenever [he] receive[s] mechanic's lien notices in Massachusetts for entities on which the Rockland entities have mortgages, [he] do[es] not cause a claim to be filed because it is not necessary under Massachusetts law; and (4) nothing contained in the citations contradicted the above. (Exhibit 3.)
At hearing, Mr. Neuner gave similar testimony. Specifically, he testified that upon receiving the citations and learning of the potential liens on the property, Mr. Neuner stopped advancing monies on the construction loan, notified the construction department, and informed the borrowers. He also made this loan an agenda item for a status meeting with the borrower to address the liens. However, Mr. Neuner did not take any further action. He neither filed an answer, nor forwarded the citation to any of Rockland's in-house or approved outside counsel. *Page 6 
Mr. Neuner explained that he did not take any action because he believed Rockland's first and third mortgages would retain their priority. He based this belief on his career dealing with various types of commercial loans, as well as his reading of the citations. He testified that he understood the citation's language to mean that the petitioners only had a claim against the property owner's interest and not against Rockland's interest it held in the first and third mortgages. He further testified that he understood the language "respond, if they shall see fit" to mean that he had some discretion over whether or not to respond.[4] Moreover, he also reasoned that it was common practice to stop lending when a lien was recorded against the property. Thus, he did not discuss the citation with his superior because he thought his superior shared his belief that Rockland was protected as long as it stopped making further advances.
Mr. Neuner also testified that he never encountered mechanics' liens, in either Rhode Island or Massachusetts, while working in the area of commercial loans for over 20 years.[5] He further testified that he was not familiar with Rhode Island's Mechanics' Lien Law, nor was anyone else at Rockland. However, in mid-January 2009, he learned that Rockland's mortgages could be subordinated after attending a meeting with his superior who explained that was the case. He testified that he did not know how his superior obtained this information, but that his superior was, like himself, shocked and startled to learn of the possibility of subordination.
 Analysis
Our Supreme Court has noted that "[e]ven though [the Mechanics' Lien Law] is in derogation of the common law and therefore calls for strict compliance with its requirements, it nonetheless should be construed to carry out its purpose of afford[ing] a liberal remedy to all who have contributed labor or material[s] towards adding to the value of the property to which *Page 7 
the lien attaches." Faraone v. Faraone, 413 A.2d 90, 91 (R.I. 1980) (internal quotations and citations omitted). Under the statute, a notice of intention to claim a lien must first be recorded on the title records. See section. 34-28-4 et seq. A suit may then be filed with the Superior Court pursuant to § 34-28-10, and notice must be provided to creditors and claimants. See section 34-28-14. After the claims are contested, the Court shall order a sale. See section 34-28-21.
Section 34-28-20 broadly permits that:
 [e]very defendant to any complaint and every person claiming to have a lien under § 34-28-1, 34-28-2 or 34-28-3 on the property described therein or on any part thereof, and every person claiming an interest therein by title, claim, lease, mortgage, attachment, or other lien or encumbrance, may contest the right of the plaintiff and of all others claiming a lien under this chapter to the property or any part thereof to any lien, as well as the amount of the claim. Section 34-28-20 (emphasis added).
As clearly enunciated by the legislature in § 34-28-16, the failure to promptly contest the claim results in the loss of a mortgage's priority status:
 (a) The liens, under § 34-28-1, 34-28-2, 34-28-3
or 34-28-7, of all persons, . . . and the title, claim, lease, mortgage, attachment, or other lien or encumbrance of all persons who have any title, claim, lease, mortgage, attachment, or other lien or encumbrance . . . to or in the property which is the subject matter of the complaint, except the persons who have recorded the lien or encumbrance before the filing of the complaint and who have not been served with or mailed a citation as provided in § 34-28-15 and who have no actual knowledge, on or before the return day, of the pendency of the complaint, shall be subordinated to the claim of the plaintiff, and persons claiming liens pursuant to this chapter, and any other person having any mortgage, attachment, or other lien or encumbrance who have entered an appearance as a party in the cause, unless the person shall, within twenty (20) days after the return day, or within such other time as may be allowed by the superior court pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure enter an appearance as a party in the cause commenced by the complaint described in §§ 34-28-10 and 34-28-13 and shall file an answer as follows:
 (1) . . . *Page 8 
 (2) In the case of persons who have any title, claim, lease, mortgage, attachment, or other lien or encumbrance (other than under § 34-28-1, 34-28-2, 34-28-3 or 34-28-7), file a claim setting forth the particulars thereof and praying for the relief and priority to which the person shall deem himself or herself entitled.
 (b) . . .
 Section 34-28-16 (emphasis added).
Thus, petitioners may only avoid subordination of their interests if they did not receive actual notice of the filing of the mechanic's lien or timely sought relief under Rule 60(b). See section 34-28-16(a).
Under Rule 60(b) of the Rhode Island Rules of Civil Procedure, as incorporated by § 34-28-16, relief may be sought from subordination
 [o]n motion and upon such terms as are just, . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Super. R. Civ. P. Rule 60(b).
Our Supreme Court has repeatedly described the "excusable neglect" of subsection (1) as:
 [a] failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party. Pleasant Management, LLC v. Carrasco, *Page 9 960 A.2d 216, 224-25 (R.I. 2008) (quoting Jacksonbay Builders, Inc. v. Azarmi, 869 A.2d 580, 584 (R.I. 2005)).
The High Court has also held that "`[e]xcusable neglect that would qualify for relief from judgment is generally that course of conduct which a reasonably prudent person would take under similar circumstances.'" Id. at 225 (quoting Pari v. Pari, 558 A.2d 632, 635
(R.I. 1989)). "It is well settled that unexplained neglect, whether by a party or its counsel, standing alone, will not automatically excuse noncompliance with orderly procedural requirements." Id. at 224 (quotingJacksonbay Builders, Inc., 869 A.2d at 584). Rather, the moving party must satisfy the high burden of "establish[ing] that [the] neglect was occasioned by some extenuating circumstance of sufficient significanceto render it excusable."[6] Jacksonbay Builders, Inc., 869 A.2d at 584
(quoting King v. Brown, 103 R.I. 154, 157, 235 A.2d 874, 875 (1967)) (emphasis added).
Moreover, "[t]he existence of excusable neglect is a question of fact and must be established by evidence." Id. at 222 (internal quotations and citations omitted). A trial justice should interpret excusable neglect flexibly, "taking account of all relevant circumstances surrounding the party's omission." Id. at 225. These circumstances "`include . . . the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" Id. (quoting Conetta v. National Hari Care Centers,Inc., 182 F.R.D. 403, 406 (D.R.I. 1998)). However, the excusable neglect standard in Rule 60(b) does not address the issue of prejudice.Astors' Beechwood v. People Coal Company, Inc., 659 A.2d 1109, 1116
(R.I. 1995). *Page 10 
 Rather, the rules focus on the movant's reasons for missing the deadline, not on the effect of missing the deadline upon the opposing party. Therefore, a demonstration that the opposing party was not prejudiced is not relevant to whether the movant's conduct constituted excusable neglect. The rules address the reasons for the neglect, not its duration or consequence. Id.[7]
In Coutu v. Porter, 744 A.2d 405, 406 (R.I. 1999), the Court held that "the defendants' attorney's failure . . . to file a timely notice was fully within his control." Coutu, 744 A.2d at 406. Moreover,
 [h]e had a responsibility to know the rules and procedures governing arbitration. . . . A reasonably prudent attorney would perhaps have contacted the arbitrator or the court when he had not received the award. At the very least, a reasonably prudent attorney in these circumstances would not have waited in silence until the time for rejecting an award had expired. Id.; see also Jacksonbay Builders, Inc., 869 A.2d at 584-85 ("[T]he [defendants'] failure to file a timely objection to the arbitration award because they were unfamiliar with the law" "f[e]ll far short of the standard . . . that the neglect be "occasioned by some extenuating circumstance of sufficient significance to render it excusable.").
In Phoenix Construction Co., Inc. v. Hanson, 491 A.2d 330 (R.I. 1985), our Supreme Court specifically dealt with the application of Rule 60(b) in the mechanic's lien context. Notably, in concluding that the trial justice did not err in refusing to allow the Hansons to file out of time, our Supreme Court explained that
 [t]he controlling statutory provision mandates that the lien of all persons, including mortgagees, who are not otherwise excepted, "shall be void and wholly lost" unless they shall enter their appearance and shall file a claim as prescribed therein. Section 34-28-16. In addition, a case interpreting this statute has been determined to be in derogation of the common law and hence must be strictly construed. Id. at 333. *Page 11 
Considering the Rule 60(b) standard and the evidence before the Court, and giving due regard to the policy of strict construction, this Court concludes that Rockland has not met its burden of proving excusable neglect and thus may not file a claim out of time to the petitions filed by Northern Site, Sheridan Electric, Inc., Rustic, and Roofing Concepts. Although Rockland's responses were filed in a range of one to three months late, [8] "the reasons for the neglect, not its duration or consequence[,]" is the focus of Rule 60(b). Astors' Beechwood,659 A.2d at 1116. Rockland's "failure to take the proper steps at the proper time" was at the very least the result of its own inattention — even if its failure to respond was not a willful disregard of the court's process — and was not "in consequence of some unexpected or unavoidable hindrance or accident." Pleasant Management, LLC, 960 A.2d at 224-25
(quoting Jacksonbay Builders, Inc., 869 A.2d at 584). Mr. Neuner did not testify as to any "extenuating circumstance of sufficient significance to render it excusable." Jacksonbay Builders, Inc., 869 A.2d at 584
(quoting King, 103 R.I. at 157, 235 A.2d at 875). Nor did he testify that he "reli[ed] on the care and vigilance of his counsel or on promises made by the adverse party." Pleasant Management, LLC,960 A.2d at 225 (Defendants' failure to appear at hearing was excusable because they were told not to attend by Plaintiff's counsel.).
Rather, quite simply, he testified that he did not take any action because it was his belief — and his reading of the language did not indicate otherwise — that Rockland would retain its position as first and third mortgage lien holders. Any "reasonably prudent person," upon receiving a legal document that was unfamiliar and contained a deadline to respond, would ask someone who was knowledgeable to review it, rather than filing it away for a meeting nearly two months later and well beyond its express deadline. Pleasant Management, LLC, 960 A.2d at 225. *Page 12 
Any reasonably prudent lender, here, holding two mortgages worth roughly four million dollars would take some action. See Coutu, 744 A.2d at 406. Even if Mr. Neuner believed that a response was not required after reading the citation is insufficient to establish excusable neglect.See Phoenix Construction Co., 491 A.2d at 333. At the very least, Mr. Neuner could have brought the citation to his superior's attention.See Pleasant Management, LLC, 960 A.2d at 225; see also Pari,558 A.2d at 635.[9] Whether or not it was common practice to simply stop lending, as Mr. Neuner testified at hearing, does not make Rockland's inaction reasonable. Mr. Neuner's failure to timely respond was fully within his control and resulted from his lack of attention and, thus, was not excusable neglect. See Coutu, 744 A.2d at 406.
Rockland argued, though not very thoroughly, that relief should also be provided pursuant to Rule 60(b)(6), which provides for relief for "any other reason justifying relief from the operation of the judgment." Super. R. Civ. P. Rule 60(b). Our Supreme Court has cautioned that this section "is not intended to constitute a catchall," Bendix Corp. v.Norberg, 122 R.I. 155, 158, 404 A.2d 505, 506 (1979), and:
 if the neglect is inexcusable, thereby precluding any relief under Rule 60(b)(1), then that same inexcusable neglect cannot constitute the `other grounds' required to obtain relief under Rule 60(b)(6) unless other extraordinary and unusual factors also are present that would justify granting such relief. Bailey v. Algonquin Gas Transmission Co., 788 A.2d 478, 482-83 (R.I. 2002).
Accordingly, this Court will not apply relief under this section:
 unless there has been a showing by appropriate evidence of circumstances that would establish a uniqueness that puts the case outside of the normal and usual circumstances accompanying failures to comply with the rules. In short, the evidence should *Page 13 
establish that the peculiar circumstances pursuant to which the default judgment was entered, if permitted to stand, would work a manifest injustice. Greco v. Safeco Ins. Co. of America, 107 R.I. 195, 198, 266 A.2d 50, 52
(1970).
Rockland has not established any such "extraordinary and unusual factors." Bailey vs. Algonquin Gas Transmission Co. 788 A.2d 478 at 483. Rockland received notice of the petitions and failed to take any action. Consequently, Rockland is not permitted relief under Rule 60(b)(6).
 Conclusion
After carefully considering the evidence presented to the Court and the arguments of the parties, this Court finds that Rockland has failed to establish that it should be entitled to relief from subordination under Rule 60(b), pursuant to § 34-28-16(a). Accordingly, the liens of Northern Site, Sheridan Electric, Inc., Rustic, and Roofing Concepts have priority to the mortgages of Rockland. The remainder of Rockland's motion for relief from subordination is denied.
Counsel shall submit the appropriate judgment for entry.
[1] The Rockland entities also held a second mortgage, which is not at issue because the loan was never advanced.
[2] The issue of whether Rockland will be permitted to foreclose under § 34-28-16.1 has been bifurcated and will be addressed at a separate hearing.
[3] That Rustic did not object to Rockland's motion is not dispositive with respect to the Court's ruling on Rockland's priority in regards to Rustic's. Rockland must still meet the Rule 60(b) standard.
[4] As previously indicated, any constitutional issue raised will be reached at a later time.
[5] It is noteworthy that one of the reasons stated in Mr. Neuner's sworn affidavit for not timely responding is that he is not required to respond, when he receives Massachusetts citations.
[6] This standard is higher than the "good cause" showing required under Rule 55(c). See Reyes v. Providence Place Group, L.L.C.,853 A.2d 1242, 1248 (R.I. 2004) ("Excusable neglect is a more rigorous standard than good cause, and it requires a party to show that the neglect was occasioned by some extenuating circumstances of sufficient significance to render it excusable.") (internal quotations and citations omitted).
[7] In any event, there was no demonstration of prejudice. Even if subordinated, Rockland would retain foreclosure rights. No appraisals were produced at hearing to demonstrate whether the full debt would be recovered.
[8] Rockland did not indicate why it filed two of its responses two and one-half to three months late when it had already discovered the need to respond and filed two responses only one month late.
[9] In Pari, our Supreme Court held that a husband's failure to participate in divorce proceedings because he could not afford an attorney and did not know the law, specifically what constituted an entry of appearance, was not excusable neglect. 558 A.2d at 635. The Court concluded that "in light of the undisputed fact that defendant received the divorce complaint and summons, at a minimum he could have visited the Family Court and sought advice on how to represent himself."Id.